## INTERNATIONAL STANDARD ELECTRIC CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 351, 352.

Circuit Court of Appeals, Second Circuit.

Aug. 11, 1944.

Allin H. Pierce, of New York City, for petitioner, International Standard Electric Corporation.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Robert Koerner, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer is a holding and management company in the International Telephone & Telegraph System, a world-wide system of telephone, telegraph and radio communication with sales and manufacturing units, under the ownership of the taxpayer, whose stock was all owned by the International Telephone & Telegraph Corporation. Each of the subsidiaries, with the exception of one domestic corporation operating in China, was incorporated under the laws of the country in which it operated. They do not engage in business within and have no offices in the United States. The taxpayer is not engaged in manufacturing and does not do business in any foreign country and has no foreign branch or office. It is organized under the laws of the State of Delaware. Under written contracts with its foreign subsidiaries, it provides management services, technical assistance, and patent, financial and accounting information. In its New York offices it employs experts, technicians and clerks who are informed about development in the communications industry and correlate the work of the laboratories and the manufacturing and sales subsidiaries located abroad. Technical experts on the taxpayer's staff are loaned to subsidiaries at the latter's expense. For its managing services it charges its subsidiaries fees, and it charges for patent privileges, royalties and patent information.

The questions to be decided on this appeal from the decisions of the Tax Court relate to the credit to which the taxpayer is entitled for foreign taxes by virtue of Section 131 of the Revenue Acts of 1936 and 1938. They include (1) the determination of the meaning in subsection (b) of the term "net

income", (2) the determination whether royalties paid by foreign subsidiaries to domestic corporations are to a ratable extent deductible from gross income arising from foreign sources. Section 131[1] and Section 119[2] have reference to such a credit and so far as pertinent are set forth below.

Section 119 is necessarily relevant to the questions before us because Section 131(e) states that the credits under Section 131 shall be allowed only if the taxpayer establishes to the satisfaction of the Commissioner "the total amount of income derived from sources without the United States, determined as provided in section 119."

Under the 1918 Act the amount of credit allowed upon United States taxes for income taxes paid to foreign countries was the full amount of such foreign taxes, but in subsequent acts there has been a limitation to prevent the United States taxes from being reduced to such an extent. Under Section 131(b) the credit is now limited to the proportionate amount of the foreign taxes "which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year."

Most of the income derived by the taxpayer from its foreign subsidiaries has come from dividends which they have paid to it. The taxpayer contends that in determining the net income derived from foreign sources

---

[1] "Sec. 131. Taxes of foreign countries and possessions of the United States

"(a) Allowance of credit.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

"(1) Citizen and domestic corporation.— In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *

"(b) Limit on credit.—The amount of the credit taken under this section shall be subject to each of the following limitations:

"(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his entire net income for the same taxable year; and

"(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year.
* * * * * *

"(e) Proof of credits.—The credits provided in this section shall be allowed only if the taxpayer establishes to the satisfaction of the Commissioner (1) the total amount of income derived from sources without the United States, determined as provided in section 119, (2) the amount of income derived from each country, the tax paid or accrued to which is claimed as a credit under this section, such amount to be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary, and (3) all other information necessary for the verification and computation of such credits." 26 U.S.C.A. Int.Rev.Acts, pages 880, 1068.

[2] "Sec. 119. * * *

"(c) Gross income from sources without United States.—The following items of gross income shall be treated as income from sources without the United States:

"(1) Interest other than that derived from sources within the United States as provided in subsection (a) (1) of this section;

"(2) Dividends other than those derived from sources within the United States as provided in subsection (a) (2) of this section;

"(3) Compensation for labor or personal services performed without the United States;

"(4) Rentals or royalties from property located without the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using without the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like properties; and

"(5) Gains, profits, and income from the sale of real property located without the United States.

"(d) Net income from sources without United States.—From the items of gross income specified in subsection (c) of this section there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto, and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be treated in full as net income from sources without the United States." 26 U.S. C.A. Int.Rev.Acts, pages 876, 1064.

no amount of its expenses or other deductions, ratable or otherwise, should be applied to reduce income derived from dividends. If such a method of computing the credit should be adopted the ratio which the net income from the subsidiaries would bear to the total net income would be greatly increased and the credit for taxes paid to foreign governments correspondingly increased. It evidently was to avoid the inclusion of income derived from foreign sources without diminution by reason of the general expenses of the business as a whole and a resulting increase of the credit upon the United States taxes that the apportionment provisions in Section 119(d) were made so very broad and there was inserted in subdivision (d) the provision that "a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income" are to be deducted from the gross income specified in Section 119(c). Dividends constitute one of the items of gross income listed in Section 119(c).

It is argued that the dividends derived from the foreign subsidiaries ought to bear no part of the expenses because they were received by the taxpayer without expense to it. The difficulty with the argument, as Sternhagen, J., remarked in his opinion on behalf of the Tax Court, 1 T.C. 1153, is that there "is no room for it in the statute * * *." Sternhagen, J., added with his usual clarity and perspicacity: "The net income from all sources, domestic and foreign, takes account of all deductions, and the net income from foreign sources, for purpose of the ratio, is likewise the remainder after deductions. Section 119, imported by section 131(e), provides that the unidentifiable amount of deductions applicable to foreign income is a ratable part of all unidentifiable deductions. This is a comparatively simple method of disposing of what might in many instances be an extremely difficult problem of accounting with precision for the deductions applicable to a given part of a taxpayer's income." It is because of the clear terms of the statute that it is impossible for us to sustain contentions of the taxpayer based upon administrative procedure in prior years and upon some indications in Treasury Form 1118 which seem to bear a contrary interpretation of the statutory intent. We think the language too clear in itself to permit any construction other than that given by the Tax Court.

Deductions which have been questioned by the taxpayer are royalties and fees for patent rights and for technical information paid by the taxpayer which resulted in the receipt by it from its subsidiaries of income from royalties, contracts and export sales. It is argued by the taxpayer that these expenses should have been allocated to royalties, contract revenue and gross profits from sales and not apportioned by the Commissioner according to the ratio which gross income from foreign sources bore to total gross income. The Tax Court found that the royalties and fees paid by the subsidiaries to the taxpayer resulted in the receipt by the latter of royalty income, contract revenue and income from export sales. It also found that the taxpayer's expenditures for royalties and fees could not be definitely allocated to any class of gross income in spite of the fact that such expenditures were found not to be related to the amount of the dividends received from the foreign subsidiaries.

The Commissioner takes the position that the specification of the various classes of gross income in section 119(c) of the Act and the provision of Section 119(d) for allocation of deductions for expenses required the Tax Court to allocate the expenses among the different classes of income derived from royalties, contract revenue and expert sales respectively, and that as he cannot determine what part of the expenses should be attributed to each of the various receipts of income from foreign sources, the ratable apportionment made by the Tax Court was proper. It seems to us fairer to allocate the expenses to the aggregate items of foreign income found by the Tax Court to have resulted from the payment of the royalties and fees, especially when the conclusion was reached that these expenses bore no relation to the receipt of dividends. In doing this, the expenses should be allocated according to the percentages of sales, royalties and contract revenue from each foreign country.

The orders of the Tax Court are affirmed except as to the apportionment of payment for royalties and technical information which must be allocated to income from sales, royalties and contract revenue in accordance with the percentage of sales, royalties and contract revenue received from each foreign country. The proceedings are remanded to the Tax Court to recompute the taxes accordingly.