710

ERICH O. AND GABRIELE H. GRUNEBAUM, PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

KURT H. AND ANNELIESE GRUNEBAUM, PETITIONERS *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4170–66, 4171–66. Filed August 6, 1968.

*Michael I. Smith*, for the petitioners.
*Bernard Goldstein* and *Robert S. Gorin*, for the respondent.

714

716

**OPINION**

RAUM, *Judge:* Section 901 of the Internal Revenue Code of 1954 entitles a taxpayer, if he so elects, to credit directly against his income tax certain taxes paid to foreign countries or possessions of the United States, "subject to the applicable limitation of section 904." Section 904(a) contains two alternative limitations on this foreign tax credit, the per country limitation and the overall limitation, the choice between them being left, at least initially, with the taxpayer. Both are designed to prevent the amount of foreign taxes credited from offsetting U.S. tax on the taxpayer's domestic income, i.e., to restrict the amount of foreign taxes credited to roughly what the U.S. income tax would otherwise have been on the taxpayer's foreign source income. H. Rept. No. 1358, 86th Cong., 2d Sess., p. 2 (1960), S. Rept. No. 1393, 86th Cong., 2d Sess., p. 3 (1960) ; H. Rept. No. 350, 67th Cong., 1st Sess., p. 13 (1921).

Petitioners Erich and Kurt Grunebaum, who together with their respective wives filed joint Federal income tax returns for 1961, paid or incurred foreign taxes in 1961 in the amounts of $90,833.46 and $90,646.40, respectively, and each credited foreign taxes directly against

718

U.S. income tax. Each elected to apply the overall limitation in computing the allowable amount of the foreign tax credit, which provides that "the total amount of the credit * * * shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States * * * bears to his entire taxable income for the same taxable year." Sec. 904(a)(2), I.R.C. 1954.[4] Stated another way, the maximum amount allowable as a foreign tax credit under the overall limitation is expressed by the formula:

$$\frac{\text{Taxable income from sources without the United States}}{\text{Total taxable income}} \times \begin{array}{c} \text{U.S. tax before credit} \\ \text{for foreign taxes} \end{array}$$

Erich Grunebaum computed his overall limitation to be $91,499.08, which amount was greater than the sum of foreign taxes paid or accrued during 1961; he therefore claimed the full amount of $90,-833.46 as a foreign tax credit. Kurt Grunebaum computed his overall limitation to be $88,683.68, which was less than the sum of foreign taxes paid or accrued by him during 1961, and under the statute he could and did claim only the lesser amount as his foreign tax credit. However, the Commissioner recomputed the overall limitation in each case, and determined that under such limitation, properly computed, the maximum amount allowable as a foreign tax credit to Erich was $53,342.77, and that Kurt's maximum allowable credit was $49,683.02. In his recomputations, the Commissioner adjusted the total taxable income of both Erich and Kurt, and the amount of income tax due after such adjustments, to reflect his disallowance of certain unallowable or unsubstantiated deductions. Those adjustments affected both the denominator of the limiting fraction and the U.S. tax computed without the foreign tax credit, but those adjustments are not contested by petitioners, and that much of the overall limitation formula does not, therefore, concern us here. In addition, the Commissioner in each case reduced the *taxable* income from sources without the United States by subtracting from the foreign *gross* income reported a ratable portion of certain deductions claimed in the respective returns. Since the foreign "taxable income" is the numerator of the limiting fraction, the Commissioner's allocation of a portion of these deductions to such foreign "taxable income" had the effect of lowering the overall limita-

---

[4] The per-country limitation, the other alternative limitation, differs from the overall limitation only in that, instead of treating the taxpayer's foreign taxes collectively, it requires the computation of separate limitations with respect to the taxes paid to each foreign country. The limitation for each foreign country is computed in the same manner as the overall limitation, except that the numerator of the limiting fraction becomes the taxpayer's taxable income from the foreign country for which the limitation is being computed rather than his taxable income from *all* foreign sources.

tion and thus the maximum allowable foreign tax credits, and it is this action which petitioners dispute.

The issues raised in each case are, except for the amounts involved, identical. Both Erich and Kurt received all but a minor portion of their foreign income in 1961 from distributions in respect of limited-partnership interests held by them in a German banking concern.[5] These distributions appear to have been received by them without expense, other than that of German taxes which were withheld at the source, and without the rendition of any services on their part in 1961. They therefore concluded that, for the purpose of computing the over-all limitation on the foreign tax credit, the "*taxable* income from sources without the United States" of each of them was equal to their respective foreign *gross* incomes, without any deductions. The Commissioner, however, determined that a large portion of the capital gains deductions claimed by each of them in computing the tax on their long-term capital gains related directly to distributions from the German banking concern which they treated on their returns as long-term capital gains, and he accordingly allocated and subtracted that portion from their foreign gross incomes. His determination in this respect accounted for the major portion of the deficiencies, and petitioners now accept it as correct. But they argue that the Commissioner erred in his further determination that deductions claimed by both Erich and Kurt for charitable contributions, interest, State and local taxes, accounting fees, and casualty losses due to storm damage were not definitely attributable to either domestic or foreign income and were therefore allocable ratably between domestic and foreign gross income; they contend that all these deductions related solely to domestic gross income and were allocable wholly thereto, so that no part of those deductions could be used to reduce their "taxable income from sources without the United States."

The Commissioner's action with respect to the deductions in dispute was predicated on the command of section 862(b) of the Internal Revenue Code of 1954, which requires that, in determining "taxable income from sources without the United States," there shall be deducted from foreign gross income "the expenses, losses, and other deductions properly apportioned or allocated thereto, *and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income*" (emphasis supplied). It is clear that, in determining "taxable income from sources without the United States" under these provisions, a taxpayer must thus subtract from his foreign gross income not only those deductions properly allocable to

---

[5] Each also reported relatively small amounts of dividend income from stock in foreign companies.

such foreign income but also a ratable share of all other deductions claimed in computing his total taxable income for purposes of determining the income tax imposed by section 1 of the 1954 Code which cannot be shown to be *definitely* related to his domestic income.[6] If such relationship cannot be established, the allocation must be made notwithstanding the fact that the taxpayer may have paid taxes on his foreign income which did not take such allocated deductions into account. See *International Standard Electric Corporation*, 1 T.C. 1153, 1157–1159, affirmed and modified on another issue 144 F. 2d 487, 489 (C.A. 2), certiorari denied 323 U.S. 803; followed in *South Porto Rico Sugar Co.*, 2 T.C. 738, 743. Cf. *Missouri Pacific Railroad Co.* v. *United States*, 392 F. 2d 592 (Ct. Cl.). Moreover, in light of the Commissioner's determination here, the burden is upon petitioners to demonstrate that the deductions allocated between domestic and foreign gross income were in fact "definitely" related to the earning of income within the United States in the degree contemplated by the statute. Cf. *De Nederlandsche Bank*, 35 B.T.A. 53, 59–60.

Petitioners' proof in this regard, apart from the stipulated facts, consisted solely of the testimony of Erich and Kurt Grunebaum, which was fragmentary and summary in character. We hold that no error has been shown in the Commissioner's determination in respect of any of these deductions.

1. *Charitable Contributions.*—As to the deduction for charitable contributions, the Commissioner's action was plainly correct. Such contributions (in the aggregate amount of $3,541.68 for Erich and Gabriele and $2,875 for Kurt and Anneliese) were clearly not a charge against or "definitely" allocable to petitioners' domestic income. To the contrary, they were personal in character and had no proximate connection with the production of any income; they were unrelated to any particular item or class of income, domestic or foreign, and appear to have been made out of the aggregate of petitioners' funds, whatever their source. It is entirely immaterial under the Code that petitioners resided in the United States, that their domestic income was attributable in large part to services here, and that their income from foreign sources was "passive." The statute requires that where the deduction "cannot definitely be allocated to some item or class of gross income," a "ratable part" thereof must be deducted from foreign gross income. Indeed, unless a charitable contribution is deductible as a business expense under section 162 and referable to a particular item or class of gross income, it is just like a number of other de-

[6] However, for the purpose of computing either the per-country or the overall limitation on the foreign tax credit, "taxable income from sources without the United States," as well as total taxable income from all sources, is computed without any deduction for personal exemptions. Sec. 904(c), I.R.C. 1954.

ductions of a personal character which are allowable as a matter of legislative grace and must be regarded as a charge against the taxpayer's entire income rather than against any particular portion thereof. Certainly, petitioners have not established that the Commissioner erred in respect of the deductions for charitable contributions.

2. *Interest.*—Nor has any error been shown in regard to the deductions for interest. These deductions consist of four components in the case of Erich and Gabriele. The first component is $417.50 interest on "insurance loans." These loans were made to pay part of the premiums on insurance policies, and there is no showing that the policies were anything other than personal in character. The second component is $1,005.04 interest on "Bank Loans." The evidence shows that there were two such bank loans in undisclosed amounts, one to finance the building of a summer house in Cape Cod for these petitioners, and the other in connection with the purchase of some additional New York Hanseatic Corp. stock. The interest on the former loan was plainly personal in character, and not shown to be directly related to any domestic income.[7] The interest on the second loan may have been related to domestic income, namely, dividends from Hanseatic. But neither the amount of that loan nor that amount of interest in respect thereof was revealed in the evidence before us. For aught that appears, such interest may have been minimal in amount, and we cannot say on this record that the Commissioner's allocation of the total $1,005.04 interest on the two bank loans between domestic and foreign income was in error. The third and fourth components were $119.03 interest on "Taxes" (not otherwise identified) and $881.92 interest on "Real Estate Mortgages" (not otherwise identified). Here, too, petitioners have failed to carry their burden of proof to establish that either of these components can "definitely be allocated" to domestic income or some item or class of domestic income.

The interest deductions in the case of Kurt and Anneliese consist of three components. The first two are interest on "Taxes" (not otherwise identified) in the amount of $271.19 and interest on "Real Estate Mortgages" (not otherwise identified) in the amount of $1,121.77. What we have said in respect of the similarly designated components in the case of Erich and Gabriele is equally applicable here. The third component is "Bank Loans" in the amount of $3,397.81. The evidence shows that these loans were obtained partly to finance Kurt's "rather extensive art collection," and partly to buy additional Hanseatic

---

[7] There was a feeble attempt to characterize this loan as having a connection with domestic income by testimony that Erich did "a little" business entertaining at the Cape Cod house. However, we cannot find on this record that the summer house at Cape Cod was used in such manner as to justify any allowable deduction for business entertaining, and the interest on funds borrowed to acquire that summer house was even less directly related to the production of domestic income.

stock. The interest on the loan to finance Kurt's art collection was plainly personal and not related in any way to his domestic income. And as in Erich's case, the amount of interest in respect of the loan to purchase stock was not shown. On this record, our decision must be the same as the one reached in respect of Erich's bank loans.

3. *Taxes.*—The third major category of deductions involved in both cases is "Taxes" in the aggregate amount of $14,039.53 for Erich and Gabriele and in the aggregate amount of $16,770.34 for Kurt and Anneliese. In each case this item consists of five components: (a) Real estate taxes, (b) State and local sales taxes, (c) State income taxes, (d) automobile taxes, and (e) gasoline taxes. We cannot find on this record that any one of these components in either case can "definitely be allocated" to domestic income and that it was error on the part of the Commissioner to allocate them ratably to both domestic and foreign income. There is some evidence that Erich and Kurt each used his home for business entertaining, but the amount of allowable deduction, if any, in respect thereof was not shown, and, to the extent that a deduction for business entertaining generally in each case was allowed, the Commissioner allocated it entirely to domestic income. Accordingly, we cannot say that any of the real estate taxes here in issue were anything other than personal or were "definitely" chargeable to domestic income only. As to State income taxes, if it be assumed that a portion thereof might be chargeable directly to domestic income, then by parity of reasoning the remaining portion would be chargeable directly to foreign income, and there is no evidence before us showing that the Commissioner's allocation of the entire item to both foreign and domestic income produced a result that was any less favorable to petitioners. As to the remaining taxes, there is not even a suggestion to indicate that they were anything other than personal.

4. *Storm Damage.*—A deduction for storm damage was claimed in both cases, $176.80 for Erich and Gabriele and $830 for Kurt and Anneliese. This item was plainly personal in character, and the Commissioner was fully justified in allocating it ratably between foreign and domestic gross income.

5. *Accounting Fees.*—Finally, there is in dispute the Commissioner's allocation of the deduction for accounting fees, $250 in the case of Erich and Gabriele and $375 in the case of Kurt and Anneliese. The evidence discloses that these fees were paid for preparation of income tax returns, and what we have said above in connection with allocation of petitioners' income taxes themselves is equally applicable here. We sustain the action of the Commissioner.

*Decisions will be entered under Rule 50.*