332

Erich O. and Gabriele H. GRUNEBAUM,
Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Appellee.

Kurt H. and Anneliese GRUNEBAUM,
Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Appellee.

Mary Clark Rockefeller, Amicus Curiae.

Nos. 68–71, Dockets 33171–33174.

United States Court of Appeals
Second Circuit.

Argued Dec. 4, 1969.

Decided Jan. 5, 1970.

Michael I. Smith, Walter Freedman, Freedman, Levy, Knoll & Simonds, Washington, D. C., for appellants.

David English Carmack, Jonathan S. Cohen, Lee A. Jackson, Attys., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., for Commissioner.

Whitney North Seymour, James P. Murtagh, Harold R. Handler, Simpson, Thacher & Bartlett, New York City, amici curiae.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

The taxpayers in this case, two brothers and their wives, asserting that the Commissioner of Internal Revenue in determining deficiencies in their respective income taxes for the year 1961 wrongfully denied them a portion of the foreign tax credit provided for in Section 901 of the Internal Revenue Code of 1954, petition for a review of the opinion and decisions of the Tax Court sustaining the Commissioner. The facts pertinent to resolution of the issue were stipulated and are fully incorporated into the Tax Court findings of fact and opinion, reported at 50 T.C. 710 (1968), Raum, J. Inasmuch as disposition of the case presented to us turns upon the construction to be given the relevant language of the Code and not upon the facts, we do not dwell upon them here, but reference may be had to the findings reported below. It suffices to state that in 1961 all four of the taxpayers were citizens and residents of the United States, that they had sizable income from salary and investments in this country, and that they also had substantial income from West Germany and had paid West German taxes on the West German income. Section 901 of the Code permits taxpayers to credit foreign taxes so paid upon foreign income directly against the United States tax they would otherwise owe on their entire income, subject, however, to various applicable limitations set forth in

Section 904, including the overall maximum limitation, the proper computation of which is at issue on this appeal.

Section 904 limits the credit for foreign taxes to a sum no larger than the United States tax which would otherwise be payable on the income received from the foreign sources. Thus the ratio between the foreign tax credit and the total tax from which it is subtracted may not exceed the ratio between the taxpayer's foreign source income and his total income both domestic and foreign. The maximum foreign tax credit, or foreign tax credit limitation, can thus be calculated by the following formula:

$$\frac{\text{Taxable income from foreign sources}}{\text{Taxable income from foreign and United States sources combined}} \times \frac{\text{United States tax on total taxable income from both United States \& foreign sources, before foreign tax credit}}{} = \frac{\text{Maximum amount allowable as foreign tax credit under overall limitation.}}{}$$

The question before us for decision concerns the way in which certain deductions from income should be allocated between foreign source income and total income in calculating the numerator and denominator of the fraction above. The resident citizen taxpayers had deductions for charitable contributions, interest, state and local taxes, accounting fees, and casualty losses due to storm damage. On their 1961 returns they allocated these properly deductible items entirely to total income—the denominator of the fraction in the formula—and did not allocate any of the deductions to the numerator, or foreign source income. The Commissioner, however, held that since these deductions did not relate specifically to income from any particular source, they should be divided *pro rata* between United States income and foreign source income. Accordingly, the Commissioner applied part of the deductions to the foreign source income, which constitutes the numerator of the fraction. As a result the numerator was smaller, and therefore the foreign tax credit limitation was also smaller, than the equivalent figures produced by the taxpayers' method. The taxpayers appealed this computation of the tax credit limitation to the Tax Court, and that tribunal, as stated above, upheld the Commissioner.

Pending argument of taxpayers' appeal Mary Clark Rockefeller, a resident citizen taxpayer, sought leave to enter the case as an amicus on the part of taxpayers, to file briefs and to present oral argument. Leave was granted.

After full presentation of the issues by all parties we find ample support for the Tax Court's conclusion sustaining the Commissioner. Section 862(b) of the Code, which defines the method for calculating taxable foreign source income, states that there shall be subtracted from gross foreign source income "the expenses, losses, and other deductions properly apportioned or allocated thereto, *and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income.*" (Emphasis supplied.) This language is quite explicit in compelling the method of computation used by the Commissioner. Taxpayers and the *amicus curiae* argue that the deductions referred to in the quoted section comprehend business deductions only and do not include the personal deductions involved here. We do not find any support whatsoever in the language of the statute that would justify such a construction of it.

There is also no support for such an interpretation by reference to the con-

gressional policy that underlies the statute. Taxpayers argue that the deductions have already been taken into account in the computation of the total tax on income from all sources—the multiplier in the formula above—and that to consider them elsewhere in the formula would be to distort the intent of the statute.

This is a misapprehension of the purport of the provision, for the deductions are considered in arriving at the denominator of the fraction in determining total income from all sources. To omit similar consideration from the numerator—the foreign source income—would have the effect of allocating all personal deductions to domestic income and no personal deductions to foreign income, a result which would obviously defeat the purpose of the statute by making foreign income appear larger and domestic income appear smaller than each in truth is.

In advancing their argument the appellants rely upon several sources of authority which we do not find relevant. They cite I.R.S. Doc. No. 5517, a pamphlet prepared by the Service to assist taxpayers in computing their taxes, and they claim that examples the Service included therein demonstrate that when the formula is used all one's personal deductions may be taken from gross income and none from foreign source income. However, the document does not state that in making such an allocation the deductions are unrelated to domestic income, and we must assume, absent some good reason to the contrary, that the deductions are related. A supporting argument of the amicus that "itemized deductions" mentioned in the document cannot comprehend deductions other than non-allocable personal deductions is also not convincing.

In addition, appellants and the amicus advance arguments to support their interpretation of the proper application of the limitation under Section 904(a) (2) by reference to Code sections other than Section 904 which also incorporate distinctions between income from domestic sources and income from foreign sources. Some of the arguments so advanced are based on the present Code and some are based on sections of earlier Codes. All may be treated together. Section 214(b) of the 1921 Code, defining taxable income of nonresident aliens from sources within and without the United States for purposes of permitting the exclusion of foreign source income received by such nonresident alien stated that certain personal deductions (specifically, deductible losses, taxes, and charitable contributions) were to be allowed in arriving at the sum taxable by the United States only if shown to be connected with gross income from United States sources. Deductions other than those specified were to be prorated between foreign and United States source income according to Section 217, a predecessor of present Sections 861 and 862. The appellants conclude that the proration provided for in Section 217 was never for any purpose meant to apply to any personal deductions, but only to business deductions, and that this policy carries over to all present definitions of foreign and United States source taxable income, whether of resident citizens of this country or of nonresident aliens.

The 1928 Act similarly removed certain personal deductions from proration, stating in Section 212(c) that a nonresident alien could deduct charitable contributions but only those made to United States charities, and could deduct only those losses sustained in connection with property within the United States. The amicus infers that because these provisions removed two of the important personal deductions from proration the proration provision was aimed to apply mainly, and indeed exclusively, to business deductions.

The policy of the 1928 Act is continued in Section 873 of the 1954 Code as that section read in 1961, the tax year in question. Deductions are allowed only if the deductions from income are connected with income from domestic sources; apportionment of deductions

with respect to sources is to be accomplished under Sections 861 and 862; and charitable contributions and losses are to be permitted under the same conditions as those established in the 1928 Code.

Before evaluating the pertinence of these arguments to the issues before us we also set forth the arguments made by the amicus concerning the exclusion of certain foreign source income earned by nonresident citizens as opposed to the treatment of such income received by non-resident aliens. The amicus cites Rev. Rul. 55–191, 1955–1 C.B. 367, dealing with the predecessor of present Section 911(a) (1). The Ruling provides that deductions allocable to the excluded (foreign source) income may not be applied against the income which remains subject to tax. However, it provides that deductions which relate *both* to excludable and to includable income should be allocated according to the predecessor of present Section 861, whereas deductions related to *neither* includable nor excludable income may be deducted entirely from includable income. The amicus infers that a similar distinction should be read into Section 904 so that business deductions relating *both* to foreign and domestic source income should be prorated, whereas personal deductions related to *neither* foreign nor domestic income should not be applied against foreign income.

■ Our reaction to the arguments based on the purport of both the non-resident alien and nonresident citizen provisions is the same. The very failure of Congress and the Treasury to place the same limitations on proration into Section 904 as it placed on proration in these other sections would seem to be conclusive of a desire to differentiate. When different sections of the Code are involved, it is necessary to examine the policy underlying each section. In this case, even if one were to attempt to apply the deduction policies expressed in Sections 873 and 911 to the tax credit limitation, the transposition would be difficult. The Revenue Ruling cited under Section 911 does indeed achieve the result the taxpayers seek here by having the effect of assigning to domestic income deductions which cannot be directly connected with either foreign or domestic income. However, the nonresident alien provisions provide that deductions other than those specifically mentioned are either to be assigned to foreign income or prorated. This policy applied to Section 904 would have precisely the opposite effect from that which the amicus desires. Nor does the amicus go so far as to argue that the specific categories of charitable deductions and losses established by Section 873 are to be read into Section 904. Thus no one pattern emerges from Sections 911 and 873. Even if one did emerge, to import it into Section 904, a section having different purposes from those of 911 and 873 and having its own legislative background, would seem a presumptuous interlarding absent some reasonably clear mandate of congressional policy.

The amicus further argues that because Section 904(c) excludes personal exemptions from the computation of the tax credit limitation, it must have been intended that all personal deductions not be prorated. We fail to see how this argument merits any discussion.

The amicus next argues that Section 904(a) (2) would be in part meaningless if the taxpayers' interpretation of the limitation is not followed. Section 904 (a) (2) states that the numerator of the fraction shall not be permitted in any case to exceed the denominator. The amicus argues that such a provision would be unnecessary absent the possibility that a taxpayer with domestic income smaller than his personal deductions could apply those personal deductions entirely against total income (the denominator) and not against foreign income (the numerator). We fail to see, however, why a fraction greater than unity could not be similarly achieved if a taxpayer should suffer a net loss from United States sources, thus making his foreign source income greater than his total income.

The amicus next makes several arguments to the effect that the Commissioner's policy produces illogical results when this policy is applied to Section 904. First, the amicus argues that the proration of personal deductions according to gross income rather than according to taxable income computed with regard to all nonpersonal deductions produces an arbitrary distribution of deductions unrelated to the true economic situation of the taxpayer. *Arguendo*, it may well be that a more realistic picture of a taxpayer's finances would be drawn if the Commissioner should prorate personal deductions upon the balances left after business deductions are taken, rather than upon gross income. Even so, however, the Commissioner would not by this method exclude all personal deductions from foreign source income while adding them to gross income, as the amicus and the taxpayers seek to do here.

The amicus argues that the Commissioner's method is unfair in that it gives the taxpayer with foreign income only part of his personal deductions. We do not follow this argument, for the tax on income from all sources, from which the taxpayer subtracts his foreign tax credit, reflects these deductions in full. The amicus further points out that the resident citizen with both domestic and foreign income is placed in a less advantageous position than the nonresident alien with both United States and foreign income. This is undeniably true, but irrelevant, since the Code clearly indicates that under appropriate conditions resident citizens will be taxed on their foreign income whereas nonresident aliens will not. One of the very last places in the whole encyclopedic compilation of federal statutes to expect to find equality of treatment in all particulars is the Internal Revenue Code of 1954.

The amicus argues that the clause "which cannot definitely be allocated" appearing in §§ 861–862 means that only those deductions which *can* be allocated, but not definitely so by recourse to the taxpayer's business books or way of life, should be prorated; that is, those deductions incapable of any ascertainable-in-fact allocation whatsoever would not be prorated, but assigned entirely to gross income. We reject this reading of the language as contrary to its obvious import.

■ Finally, the appellants call attention to a suggested change in Section 1.861–8 of the Regulations which the Treasury proposed in 1966 but after proposal has not yet adopted. This proposed amendment, found at 31 Fed.Reg. 10405, would spell out in the Regulations the view on proration of personal deductions urged by the Commissioner in this case and adopted by us. According to the appellants, the proposal must have been motivated by a desire to change the law then existing, and that law in turn must have interpreted Section 904 in the same way the taxpayers do here. Such a contention is wholly unfounded; a proposal to amend an administrative regulation can be motivated as well by a desire to clarify or restate existing law as by a desire to change existing law. Again, the interpretation of the law in 1961 must depend on the language of the statute and regulations then in force and the purpose they were then designed to fulfill.

In summary, we are satisfied that the Tax Court decisions below should not be disturbed and therefore deny the petition to review, and affirm the Tax Court.