GEORGE B. DOWELL and MARJORIE A. DOWELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dowell v. Commissioner
Docket No. 3557-75.
United States Tax Court
T.C. Memo 1977-101; 1977 Tax Ct. Memo LEXIS 341; 36 T.C.M. (CCH) 470; T.C.M. (RIA) 770101; April 6, 1977, Filed William J. Davis, for the petitioners. Joseph Falcone, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined a deficiency of $2,290.92 in petitioners' income tax for the year ending December 31, 1972. The issues are: (1) Whether the moving expense reimbursement petitioners received from Ford Motor Company is income from a source without the United States for purposes of calculating the overall limitation of foreign tax credit pursuant to section 904(a)(2), I.R.C. 1954. [1]
(2) Whether the itemized deductions claimed by petitioners are the type which cannot *343 definitely be allocated to some item or class of gross income, and therefore, should be prorated between foreign source income and domestic source income pursuant to sections 861(b) and 862(b) for the purpose of calculating the overall limitation on foreign tax credit pursuant to section 904(a)(2). All of the facts having been stipulated, they and the exhibits attached thereto are incorporated herein by this reference. Petitioners George B. and Marjorie A. Dowell, husband and wife, resided in Sao Paulo, Brazil on April 23, 1975, the date they filed their petition. Previously they had filed a timely joint income tax return for 1972. On January 24, 1975, respondent mailed petitioners a notice of deficiency for the taxable year 1972. Prior to May 4, 1969, Ford Motor Company (hereinafter referred to as Ford) employed petitioner-husband in the United States. Ford then temporarily assigned him to work in Brazil where he worked from May 4, 1969 until June 22, 1972, at which time he returned to the United States. Petitioner-husband returned to work for Ford in Dearborn, Michigan and shortly thereafter received a permanent assignment with Ford in Dearborn. Ford or its subsidiaries *344 employed him at all times during 1972. In 1972 petitioner received the following items of income from the Ford Motor Company: (a) $14,759 as salary for services performed in the United States. (b) $15,174 as salary and overseas premium for services performed in Brazil. (c) $12,696 moving reimbursement for expenses incurred in moving from Brazil to the United States in 1972. (d) $4,549 for tax reimbursement - 1970. (e) $3,406 for tax reimbursement - 1971. (f) $2,060 for rental allowance while in Brazil. (g) $1,279 for schooling allowances while in Brazil. (h) $239 for excess group life insurance premiums. (i) $237 for miscellaneous allowances while in Brazil. (j) $1,872 from Ford Motor Company stock savings program. (k) $4,066 for supplemental deferred income earned in Brazil. (l) $34 for supplemental deferred income earned in the United States. On their tax return for 1972 petitioners reported the receipt of foreign income in the amount of $43,467 of which they excluded $10,124 from gross income pursuant to section 911(a) and reported $33,343 as subject to Federal income taxation. On this return petitioners deducted $7,603 for moving expenses *345 incurred in moving from Brazil to the United States. They computed this deduction pursuant to section 217. In computing their 1972 foreign tax credit limitation pursuant to section 904, petitioners calculated their foreign gross income as follows: Prior year bonus in Brazil
$ 4,066
Tax Reimbursement 1971 in
Brazil
3,406
Salary in Brazil
15,174
Allowances in Brazil
3,576
Tax Reimbursement 1970 in
Brazil
4,549
Moving Reimbursement (Brazil
to United States)
12,696
$43,467
Less: Exemption (sec. 911)
10,124
Foreign Gross Income
$33,343
In computing their 1972 foreign tax credit limitation pursuant to section 904, petitioners calculated their foreign taxable income as follows: Foreign Gross Income
$33,343
Moving Expenses
($7,382)
(Brazil to U.S. $7,603 total
moving expense minus $221
incurred to purchase resi-
dence in U.S.)
Itemized deductions allocated
pursuant to sec. 862(b)
( 118)
Vacation earned in Brazil
1,800
Group life insurance earned
in Brazil
120
Foreign Taxable Income
$27,763
In computing foreign taxable income petitioners calculated the amount of itemized deductions attributable to *346 foreign income to be $118 by allocating their charitable and miscellaneous deductions (totaling $191.09) in accordance with section 862(b). Petitioners did not allocate their itemized deductions for interest and taxes to foreign income, contending that these deductions represented direct expenses against their United States income pursuant to section 862. Petitioners claimed the following itemized deductions for 1972: (a) $1,552 - real estate taxes on residence in Dearborn Heights, Michigan. (b) $81 - state and local gasoline taxes. (c) $486 - general sales tax. (d) $544 - Michigan income taxes. (e) $137 - sales tax on automobile. (f) $16 - real estate taxes on vacant lot in Florida. (g) $79 - charitable contributions. (h) $820 - home mortgage interest expense on residence in Dearborn Heights, Michigan. (i) $100 - tax preparation fees. (j) $12 - safe deposit box. Ford Motor Company controls the transfer of its personnel to and from its subsidiary in Brazil. The outstanding voting capital stock of Ford Motor Company, S.A. (Ford-Brazil) is owned to the extent of approximately 89 percent by Ford Motor Company.
Petitioner-husband received $1,800 income *347 during 1972 for vacation earned in Brazil, and he received $120 of life insurance coverage during 1972 which he earned in Brazil. The first issue with which we are presented is determining whether the moving expense reimbursement was income received for services to be performed in the United States. The need to determine the source of moving expense reimbursements is brought about by the interplay of sections 901, 904 and 217.[2]Section 901(b) relieves a United States citizen of the possibility of double taxation by allowing the taxpayer a credit for income taxes paid during the taxable year to any foreign government. However, section 904 imposes limitations on this credit with the purpose of preventing the tax credit from "reducing or eliminating the United States tax on income from sources within the United States." Missouri Pacific Railroad Co. v. United States,392 F.2d 592, 601 (Ct. Cl. 1968). Petitioners, by including their travel expense reimbursement in foreign source income rather than domestic source income, decreased the amount of United States source income *348 and consequently the tax thereon. Petitioners argue that their travel expense reimbursement was paid by the Ford subsidiary in Brazil and that this should be determinative of the fund's source. However, this Court has held in Dillin v. Commissioner,56 T.C. 228, 244 (1971) that: The source of income is determined by the situs of the services rendered, not by the location of the payor, the residence of the taxpayer, the place of contracting, or the place of payment. [Emphasis added] As for the situs of the services, this Court in Hughes v. Commissioner,65 T.C. 566, 572 (1975), held that moving expense reimbursements are attributable to the gross income earned at the new place of employment and as a consequence attributable to the personal services rendered there by the taxpayer. The facts in Hughes involved a move from the United States to Spain and a moving expense reimbursement paid partially by a United States parent corporation and partially by its foreign subsidiary. Consequently, *349 the payment by the Brazilian subsidiary under this fact situation does not make the reimbursement foreign source income. The second issue with which we are confronted is whether the itemized deductions claimed by petitioners on their 1972 return are the type which cannot definitely be allocated to some item or class of gross income, and therefore, should be prorated between foreign source income and domestic source income pursuant to sections 861(b) and 862(b) for the purpose of calculating the overall limitation on foreign tax credit pursuant to section 904(a)(2). The items in question are: (a) $1,552 - real estate taxes on residence in Dearborn Heights, Michigan. (b) $81 - state and local gasoline taxes. (c) $486 - general sales tax. (d) $137 - sales tax on automobile. (e) $16 - real estate tax on vacant lot in Florida. In Grunebaum v. Commissioner,50 T.C. 710, 721 (1968), affd. 420 F.2d 332 (2d Cir. 1970), cert. denied 397 U.S. 1075 (1970), this Court held that for deductions to be allocated solely to United States source income, the record must show that the itemized deductions were "proximately connected" with *350 the production of such income. The Court then suggested a test to aid in this determination: ascertaining whether the itemized deductions are deductible as a business expense pursuant to section 162 as well as referable to a particular item of gross income. In Grunebaum, the Court was concerned with the relation to domestic income of charitable contributions, interest, taxes, storm damage and accounting fees. The Court found that they were personal expenses and could not be definitely allocated to United States source income. In the case at issue there is no evidence to suggest that the expenditures for the listed items were made from other than the aggregate of petitioners' funds or that they should be treated any differently from petitioners' charitable and miscellaneous deductions which they prorated on their return. Petitioners appear to argue that since they could not deduct interest and taxes which may have been included in the rent they paid while living in Brazil, the real estate taxes and interest paid on petitioners' home in the United States should be considered expenses arising directly from the production of United States source income. The fact that petitioners *351 paid rent is irrelevant in determining whether these deductions are allocable solely to United States source income. The test is whether the expenses are proximately connected with United States source income. Section 862(b). This analysis also applies to petitioners' second argument which is that since they paid these expenses while residing in the United States they should be allocated to United States source income. However, it is the relationship of the deductible expenditures to the source of the income that we must discern, not where the expenditures are made. In the case at issue there is no proximate connection between United States source income and the deductible expenses; therefore, the deductions should be allocated between domestic and foreign income. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. Section 217↩ defines deductible moving expenses.