I. B. Dexter and Edna R. Dexter, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 104537. Promulgated July 7, 1942.

*Clark J. Milliron, Esq.,* for the petitioners.
*B. M. Coon, Esq.,* for the respondent.

OPINION.

HARRON: The petitioners claim that the amount of the credit for income tax paid and accrued to the Government of the Philippine Islands in 1936 should be the entire amount of that tax, $16,542.60. If that contention is sound, the total United States income tax in the amount of $9,073.01 will be offset by the Philippine tax and there will be no deficiency. The respondent argues that under section 131 (b) of the Revenue Act of 1936 the amount of the credit for the Philippine tax is less than the amount of the United States tax, under his original formula, and that his arithmetical formula involves a correct and

reasonable application of the statutory limitation. The pertinent provisions of section 131 of the Revenue Act of 1936 are set forth in the margin. [2]

Substantially all of petitioners' income was derived from profits from the sale of capital assets in the Philippines. The income tax of the Philippines was greater than the income tax of the United States, on the same income, because of the difference in the income tax laws of the two Governments, whereby all of the capital gains and losses are taken into account in computing "total income" in the Philippine law, and only certain percentages thereof are taken into account in computing "total income" under the revenue acts of the United States. Petitioners did not have any income from sources within the United States. The only income in question is the income from sources within the Philippines. That income has been taxed by each government. The question is whether, under the provisions of section 131 (b), the credit shall be the amount of the tax paid to the Philippines.

Section 131 provides that the income tax computed under Title I shall be credited with the amount of any income tax paid or accrued during the taxable year to any foreign country or possession of the United States, subject to the limitation on the credit imposed by subsection (b). Paragraph (2) of subsection (b) was written, perhaps, to meet situations where the taxpayer has income from sources within more than one foreign country or possession. For the purposes of this case, there is no material difference whether the question is considered in connection with paragraph (1) or paragraph (2) of subsection (b). Under both paragraphs the same result is reached. For convenience, the question is considered in connection with paragraph (1).

The wording of subsection (b) (1) is clear, unambiguous, and plain. Whether or not the result reached here is one which the Congress envisioned in drafting the statutory provision which it enacted, there is but one choice, namely, to decide the question under the statute as written.

---

[2] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF THE UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

\* \* \* \* \* \*

(b) LIMIT ON CREDIT.—The amount of the credit taken under this section shall be subject to each of the following limitations:

(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources within such country bears to his entire net income for the same taxable year; and

(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income for the same taxable year.

The language of subsection (b) (1) limits the credit to an amount not in excess of the same proportion of the tax against which the credit is taken which the taxpayer's net income from sources within a foreign country or possession bears to his entire net income. The taxpayer's net income from said sources outside the United States becomes the numerator and his entire net income becomes the denominator of the fraction used in determining the proportion set forth in the section. See *Hugh C. Wallace*, 17 B. T. A. 406, for the above paraphrasing of the statute. (The cited case, otherwise, is not in point). That is, assuming that a taxpayer's income tax under Title I of the revenue act is $1,000; that his net income from sources outside the United States is $5,000; and that his entire net income is $10,000, the credit under section 131 (a) (1), limited by subsection (b) (1), is computed by taking one-half of $1,000, the tax against which the credit is taken. The amount of the credit is $500. If the entire net income of $10,000, to continue the example, and the income from sources outside the United States are the same, both being $10,000, the amount of the credit is 100 percent of the tax against which the credit is taken, or $1,000. Then, subsection (b) does not operate as an effective limitation on the credit.

The situation in this case is practically the same as the situation in the last part of the above example. In a sense, it may be said that part of petitioners' net income from sources within the Philippines is exempt from tax under the United States revenue law, referring to net capital gains which are not taken into account in computing net income under the provisions of section 117 (a). We need not, and do not, decide the point, but see and compare I. T. 2294, Internal Revenue Cumulative Bulletin V–2 (1926), pp. 62, 63. And, *arguendo*, if that is so, and gross income means, in the case of the income from sources outside the United States, the same income that is taken into consideration in gross income under Title I of the revenue act, then the "gross income" from sources within the Philippines, for purposes of subsection (b), is $54,251.38 ($41,556.78 net capital gains recognized under our law, plus other income of $12,694.60). The gross income taken into consideration in computing the "entire net income" referred to in subsection (b) is $53,081.38 ($54,251.38 less net loss on items within the United States of $1,170). Also, the "net income" from sources outside the United States, without deduction for any income tax paid to the Philippines, is $51,686.17 ($54,251.38 less deductions aggregating $2,565.21) and the "entire net income" is $50,516.17, as is shown in the facts. The fraction under subsection (b) (1) then is $\frac{51,686.17}{50,516.17}$ and that fraction of the tax against which the credit is taken, $9,073.01, yields more than 100 percent.

For all practical purposes petitioners' contentions are fully sus-

tained if the credit for the tax paid to the Philippines is in the amount of $9,073.01. It is held, therefore, that petitioners are entitled to a credit in the amount of $9,073.01 at least. The credit equals the tax against which the credit is taken and there is no deficiency.

The plain wording of subsection (b) (1) compels this result. The respondent has trespassed into the realm of legislation in developing the formula he applied in determining the deficiency. We find nothing in the legislative history of the provision limiting the credit which is in conflict with the result reached. Petitioners' income from sources "within" the United States is not escaping United States tax. They did not have, in fact, any income from sources within the United States. The result reached avoids double taxation, that is, taxing the same income twice, which admittedly was the purpose of Congress in enacting section 131.

It is not unusual for a United States citizen to have income from sources outside the United States and no income from sources within the United States, and Congress took that into consideration. It enacted the original provision, which was substantially the same as section 131 (a) of the Revenue Act of 1936, to give relief to American citizens earning income abroad so that they would not have to pay double tax on the same income, namely, income received from sources within a foreign country. The policy involved the giving of support to our foreign trade. An example which was taken in the discussion in Congress was that of an American citizen abroad who earned income in a foreign country and received no income from sources within the United States. He was to be permitted to deduct the amount of the tax paid to the foreign country from the tax levied by the United States on the same foreign income, so that he would not pay two taxes to two governments on the same income.[3] The situation of such taxpayer did not involve any such problem as section 131 (b) was designed to overcome, namely, assurance that the United States would be protected in collecting fully the tax due on the portion of income from sources within the United States.

*Decision will be entered for petitioners.*

---

[3] Seidman's Legislative History of Federal Income Tax Laws, p. 374:

"Section 131 of the present law provides for the crediting of foreign taxes against the Federal income tax under certain limitations. The maximum benefit under the provision for the tax paid each foreign government is never greater than an amount that will relieve that portion of the income from foreign sources from the total domestic tax burden. The present credit, therefore, does not operate to relieve domestic income from tax, but does relieve the taxpayer from a double tax upon his foreign income."

"[P. 480] Mr. Hawley. It was my purpose in rising to insist that we were getting our full American tax in every instance under the amendments proposed in the bill before us, and in some instances a larger amount. If the foreign rate was lower than ours, we were getting an additional amount based upon the difference in the rates; and if there is no foreign tax, we get the tax on the income earned here and the tax on the income earned abroad. We are protecting the revenue of the United States. * * * To require that there be paid to the United States the full tax on both the income earned here and earned abroad, when the income earned abroad is taxed in the foreign country would be indefensible double taxation."