THEO. H. DAVIES & CO., LTD. & SUBSIDIARIES, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8491–78.    Filed December 29, 1980.

*Richard L. Griffith, John E. McDermott,* and *Guy P. Novo,* for
the petitioners.

*Theodore J. Kletnick* and *David M. Brandes,* for the
respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in
petitioners' income tax of $73,594 and $417,983 for the taxable
years ending December 31, 1972, and December 31, 1973,
respectively. The sole issue to be decided is the proper treatment
of capital losses incurred outside the United States in computing
the overall foreign tax credit pursuant to section 904(a)(2).[1]

This case was submitted fully stipulated pursuant to Rule 122,
Tax Court Rules of Practice and Procedure.

The petitioners are corporations which constitute an affiliated
group for the purpose of filing consolidated income tax returns.
The common parent, Theo. H. Davies & Co., Ltd., acted as agent
for the affiliated group (see sec. 1.1502–77(a), Income Tax
Regs.), and will hereafter be referred to as petitioner. At the
time the petition in this case was filed, petitioner's principal
office was located in Honolulu, Hawaii.

Petitioner is the successor corporation to Theo. H. Davies &
Co., Ltd. (hereinafter sometimes Davies), which was the taxpay-
er during the years in question. Petitioner is liable for any

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect
during the years in issue, except as otherwise indicated.

deficiencies and entitled to any overpayments determined in this case.

Davies timely filed consolidated Federal income tax returns on behalf of itself and its subsidiaries for the taxable year 1972 with the Fresno Service Center, Fresno. Calif., and for the taxable year 1973 with the District Director of Internal Revenue, Honolulu, Hawaii. Davies, a calendar year taxpayer, used the accrual method of accounting.

The relevant portion of Davies' financial data is:

|  | 1972 | 1973 |
|---|---|---|
| Gross income from sources without the United States | $905,738 | $1,286,514 |
| Capital gains (losses) from sources without the United States | (992,777) | [2](334,446) |
| Capital gains from sources within the United States | 321,944 | 638,572 |
| Foreign taxes paid, accrued, or deemed paid | 598,022 | 771,048 |
| Consolidated taxable income[3] | 1,110,682 | 3,374,625 |
| U.S. tentative income tax before foreign tax credit | 526,627 | 1,558,578 |

Foreign income taxes paid or accrued may be credited against a taxpayer's income tax. Sec. 901. The amount of such credit is limited by section 904, and, pursuant to that section as in effect during the taxable years in question, Davies elected the overall limitation.[4]

Both parties agree that section 1.904–1, Income Tax Regs., correctly restates that limitation as—

$$\text{Maximum credit} = \frac{\text{Taxable income from without U.S.}}{\text{Worldwide taxable income}} \times \text{U.S. tentative tax}$$

---

[2]Of the $992,777 capital loss incurred in 1972, $321,944 was used to offset capital gain in that year, $336,387 was carried back to 1971, and $334,446 was carried forward to 1973.

[3]The parties have stipulated that these figures may be modified depending on the resolution of a dispute not before this Court which, along with other matters not at issue herein, can be disposed of under Rule 155, Tax Court Rules of Practice and Procedure.

[4]During the taxable years involved herein, sec. 904(a)(2) read—

OVERALL LIMITATION. —In the case of any taxpayer who elects the limitation provided by this paragraph, the total amount of the credit in respect of taxes paid or accrued to all foreign countries and possessions of the United States shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

(hereinafter sometimes referred to as the pertinent fraction) where the U.S. tentative tax is the liability computed without the benefit of any credit under section 901. In addition, the parties agree that the denominator is equal to petitioner's taxable income as defined by section 63. See Rev. Rul. 57–116, 1957–1 C.B. 245. The dispute between the parties focuses exclusively upon the proper method of computing the numerator and turns upon the relationship between, and application of, sections 63(a)[5] and 862(b)[6] to the situation involved herein, namely, the existence of capital losses from sources without the United States which could not be offset against capital gains from such sources but which were in fact used in part to offset capital gains from sources within the United States.

Petitioner's position rests upon the following theory: (1) "Taxable Income from Sources Without the United States" is determined by subtracting from foreign-source gross income only those deductions "properly apportioned or allocated" to gross income from sources without the United States, section 862(b); (2) capital losses in excess of capital gains are not deductible, sections 63(a) and 1211(a);[7] (3) therefore, because petitioner had no foreign-source capital gain, it could have no foreign-source capital loss deduction; (4) as a consequence of the foregoing, petitioner's foreign-source capital loss was not "properly apportioned or allocated" to its foreign-source gross income, within the meaning of section 862(b), in arriving at the numerator of the pertinent fraction, i.e., "Taxable Income from Sources Without the United States." Petitioner also offers a series of calculations designed to demonstrate that its position, at least on the facts of this case, produces a result which narrows the gap between the total creditable foreign taxes which it paid and the amount of the allowable credit, and therefore more

---

[5]Sec. 63(a) provided that "For purposes of this subtitle the term 'taxable income' means gross income, minus the deductions allowed by this chapter."

[6]Sec. 862(b) provided:

TAXABLE INCOME FROM SOURCES WITHOUT UNITED STATES. —From the items of gross income specified in subsection (a) there shall be deducted the expenses, losses, and other deductions *properly apportioned or allocated thereto*, and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income. The remainder, if any, shall be treated in full as taxable income from sources without the United States. [Emphasis added.]

[7]Sec. 1211(a) provided that "In the case of a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of gains from such sales or exchanges."

nearly comports with the overall objective of the foreign tax credit provisions of the Internal Revenue Code, namely, the elimination of double-tax taxation.

Respondent counters: (1) Petitioner's capital losses from sources without the United States were, in fact, deducted; (2) since petitioner had a deduction, section 862(b) requires that it be taken into account in determining petitioner's foreign-source taxable income; (3) since the capital losses are concededly from sources without the United States,[8] the deduction is "properly apportioned or allocated" to gross income from sources without the United States; (4) the fact that capital gains from sources within the United States was the engine that fueled such deduction is relevant only in the sense that it provides the measure of the deduction; (5) as a consequence of the foregoing, the numerator of the previously described fraction, i.e., "taxable income from sources without the United States," should be reduced by the amount of petitioner's deduction for capital losses from sources without the United States, namely, the extent to which they were used, in this case, to offset U.S. source capital gains.

The instant case is one of first impression in terms of both the decided cases and legislative history,[9] but its significance has been severely limited by virtue of subsequent amendments to the Internal Revenue Code.[10] Although the matter is not entirely

---

[8] Such being the case, the provisions of sec. 862(b), dealing with the apportionment of allocation of a ratable part of the losses which can not be definitely allocated, does not come into play.

[9] The foreign tax credit limitation was first enacted as sec. 131(b), I.R.C. 1939, Revenue Act of 1921, Pub. L. 98, sec. 238(a), 42 Stat. 258. It was added by the Senate because—

"Where foreign income or profits taxes are imposed at rates higher than those carried by the similar taxes in this country, this [foreign tax credit] may wipe out part of our tax properly attributable to income derived from sources within the United States. To prevent this abuse, section 222 provides that in no case shall the amount of this credit exceed the same proportion of our tax which the taxpayer's net income from sources without the United States bears to his entire net income."

Committee on Finance, S. Rept. 275, to accompany H.R. 8245, 67th Cong., 1st Sess., sec. 222, at 17 (1921), 1939–1 C.B. (Part 2) 193; sec. 238, at 19, 1939–1 C.B. (Part 2) 194.

[10] The issue involved herein has been mooted for taxable years beginning on or after Jan. 1, 1976. Sec. 904(b), as amended by the Tax Reform Act of 1976, Pub. L. 94–455, sec. 1031(a), 90 Stat. 1620. It is interesting to note that these changes generated several articles in which legal commentators took differing views of the proper treatment of pre–1976 foreign capital losses. See L. Lokken, "The Effects of Capital Gains and Losses on the Credit for Foreign Income Taxes," 30 U. Fla. L. Rev. 40, 88 n. 181 (1977); J. McDermott & M. Oliner, "The Effect of

free from doubt, we conclude that respondent has the better of the argument.

We reject petitioner's attempt to confine our focus to section 63. To be sure, it is the application of section 63(a) and, through it, section 1211(a) that produces any deduction. But it is "taxable income from sources without the United States" which section 904 mandates that we interpret, and that phrase is defined in section 862(b). See *Associated Telephone & Telegraph Co. v. United States*, 199 F. Supp. 452, 465 (S.D. N.Y. 1961), affd. as to this issue 306 F.2d 824 (2d Cir. 1962). Just as the correct meaning of "adjusted gross income" is not gleaned from a reading of section 61 coupled with some dictionary definition of "adjusted" (see sec. 62), so, too, the definition of taxable income in section 63 has nothing directly to do with "taxable income from sources without the United States" as defined by section 862(b). Petitioner's argument that "taxable income" should be interpreted consistently throughout the Code is simply not relevant.[11] See L. Lokken, "The Effects of Capital Gains and Losses on the Credit for Foreign Income Taxes," 30 U. Fla. L. Rev. 40, 88 n. 181 (1977).

Thus, the focus of the controversy herein necessarily devolves upon the proper interpretation of section 862(b), which is set forth in note 6 *supra*. As we have previously pointed out, the parties agree that the capital losses were from sources without the United States[12] (cf. *De Nederlandsche Bank v. Commissioner*, 35 B.T.A. 53 (1936)), and they also agree that petitioner had gross income from sources without the United States. Under these circumstances, we think that the deduction arising from the foreign-source losses is "properly apportioned or allocated" to foreign-source income. The fact that the deduction arose

---

Foreign Source Capital Losses on the Foreign Tax Credit," 4 Int'l Tax Journal 679, 681–684 (1977); H. Dale, "The Reformed Foreign Tax Credit: A Path Through the Maze," 33 Tax L. Rev. 175, 196 n. 117 (1978).

[11]In the context of this case, where there is a specific provision relating to deductions, petitioner's reliance on *United States v. Foster Lumber Co.*, 429 U.S. 32 (1976), is misplaced. In that case, the Supreme Court, in determining the extent to which a net operating loss carryback was available, dealt with a provision relating to the computation of "taxable income" where no such specific provision was involved.

[12]This agreement comports with the position taken by the decided cases that the location of the place of sale is determinative of the source. *Commissioner v. Ferro-Enamel Corp.*, 134 F.2d 564, 566 (6th Cir. 1943), revg. 46 B.T.A. 1279 (1942); *Korfund Co. v. Commissioner*, 1 T.C. 1180, 1187 (1943), accepting the principle of *Ferro-Enamel*. The subsequent amendments dealing with capital gains and losses (see note 10 *supra*) modify this rule.

because petitioner had capital gains from sources within the United States against which these losses could be offset does not change their character. The deduction arises from foreign-source capital losses and retains this character for purposes of section 862(b). To hold otherwise, as petitioner would have us do, would produce the curious situation where such losses would either be absorbed into the income or transmuted into losses from sources within the United States. Such a consequence simply flies in the face of the actual facts.

None of the decided cases discussed by petitioner has any direct bearing on the issue before us. *Helvering v. Campbell*, 139 F.2d 865, 870–871 (4th Cir. 1944), affg. a Memorandum Opinion of this Court, *Dexter v. Commissioner*, 47 B.T.A. 285 (1942), and *Brace v. Commissioner*, a Memorandum Opinion of this Court dated August 27, 1952, all involved the questions whether the foreign tax paid should be fractionalized, in order to determine what portion of that tax was attributable to income which was taxable in the United States, and whether only that portion of the U.S. tax thus fractionalized should be utilized in determining the limitation of the amount of the tax creditable under section 131 of the Internal Revenue Code of 1939 (the predecessor of section 904). The courts uniformly rejected respondent's attempt to interject "an additional proration" (see *Helvering v. Campbell*, *supra* at 871) into the foreign tax credit and held that such tax should be treated as "unitary" (see E. Owens, The Foreign Tax Credit 61–62 (1961)) and that the appropriate computation was to be made under section 131 of the Internal Revenue Code of 1939 with the full foreign tax paid as the limiting factor.[13] Clearly, none of those cases decided the issue before us, and they are therefore distinguishable. In point of fact, however, the controlling computation set forth in *Dexter v. Commissioner*, *supra* at 290, excluded from both the numerator and denominator of the pertinent fraction the capital gains deduction allowed

---

[13] The tortuous history of the treatment of these cases as well as other decided cases involving similar considerations (e.g., *Hubbard v. United States*, 84 Ct. Cl. 205, 17 F. Supp. 93 (1936)) is revealed by I.T. 2294, V–2 C.B. 62 (the validity of which was specifically not addressed in *Dexter v. Commissioner*, 47 B.T.A. 285, 290 (1942)) (declared obsolete, Rev. Rul. 67–466, 1967–2 C.B. 427), G.C.M. 21432, 1939–2 C.B. 234 (declared obsolete, Rev. Rul. 70–293, 1970–1 C.B. 282), G.C.M. 25723, 1948–2 C.B. 131 (declared obsolete, Rev. Rul. 70–293, 1970–1 C.B. 282), and G.C.M. 26062, 1949–2 C.B. 110, revoked by reinstating G.C.M. 25723., Rev. Rul. 54–15, 1954–1 C.B. 129, 130.

under U.S. tax law, anticipating the result reached in *Motland v. United States, infra.* The rationale of such a calculation is that the denominator of the pertinent fraction should not be inflated (or reduced) without a corresponding inflation (or reduction) of the numerator (cf. *Duke v. Commissioner,* 34 T.C. 772 (1960)). That rationale is equally applicable herein.

In *Motland v. United States,* 192 F. Supp. 358 (N.D. Iowa 1961), also relied upon by petitioner, the taxpayer was required to take into account, in computing the numerator of the pertinent fraction, the 50-percent deduction for foreign-source capital gains which entered into the computation of the denominator. In that case, the deduction was directly related to the foreign-source item of income. Moreover, the effect of a contrary conclusion in *Motland* would have been to inflate the numerator of the pertinent fraction and permit a larger foreign tax credit, thereby reducing the tax otherwise payable on U.S.-source income, a result which could well obtain if petitioner prevailed herein. See note 15 *infra. Motland* simply does not support petitioner's position.

Petitioner points to Rev. Rul. 73–572, 1973–2 C.B. 289, as providing the determinative guideline for disposing of the instant case. In the situation covered by that ruling, the taxpayer had U.S.-source capital losses and foreign-source capital gains, and respondent ruled that such losses should not be "apportioned or allocated" to the numerator of the fraction even though they were taken into account in computing the denominator. Such circumstances are not, as petitioner suggests, the flip side of the same coin. Indeed, the rationale of that ruling supports respondent's position herein. The U.S.-source losses remained domestic losses and could not be transformed into foreign losses and thereby be "apportioned or allocated" to foreign-source income, any more than the foreign-source losses involved herein can, or should, in our opinion, be transformed into U.S.-source losses and "apportioned or allocated" to U.S.-source income. Consequently, although we would not, in any event, be bound by Rev. Rul. 73–572, *supra* (see *Dixon v. United States,* 381 U.S. 68, 73 (1965); *Stubbs, Overbeck & Associates v. United States,* 445 F.2d 1142, 1146–1147 (5th Cir. 1971); *Sandor v. Commissioner,* 62 T.C. 469 (1974), affd. per curiam 536 F.2d 874

(9th Cir. 1976)), we conclude that petitioner's reliance thereon is totally misplaced.[14]

Our analysis not only comports with the statutory language involved but also avoids the possibility that the foreign tax credit would relieve a taxpayer of the U.S. tax that would otherwise be payable on U.S.-source income—a result which would be incompatible with the underlying purpose of the foreign tax credit provisions. See *Motors Insurance Corp. v. United States,* 208 Ct. Cl. 571, 579, 530 F.2d 864, 869 (1976); *Grunebaum v. Commissioner,* 50 T.C. 710, 717 (1968), affd. 420 F.2d 332 (2d Cir. 1970); E. Owens, *supra* at 296–300; note 9 *supra.* Petitioner has favored us with several mathematical calculations designed to show that its theory produces less of a gap between the total amount of foreign taxes paid and the amount of its foreign tax credit than would be the result if respondent's theory were applicable. We are unpersuaded by these calculations, which, in any event, are incomplete, because we have not been favored with whatever differentials in foreign and U.S. tax rates may have existed. Admittedly, it can be argued that, under the circumstances of this particular case, the effect of applying respondent's theory is to increase the U.S. tax on foreign-source income rather than to reduce the U.S. tax on U.S.-source income. But the fact of the matter is that petitioner's theory could cause a taxpayer with net domestic income to pay no U.S. income tax,[15] a result antithetical to section 904. See *Motors Insurance Corp. v. United States,* 530 F.2d at 873.

In sum, we hold that petitioner's foreign-source captial losses

---

[14]In reaching our conclusion, we have not taken into account the fact that, in its General Explanation of the Tax Reform Act of 1976, the staff of the Joint Committee on Internal Revenue Taxation asserts that prior law supports respondent's position. See 1976–3 C.B. (Vol. 2) 257. It is extremely doubtful whether such retroactive "legislative history" would provide a meaningful foundation for the conclusion we have reached even if it had support in material found in the committee reports or congressional debates (which it does not). See *United Telecommunications, Inc. v. Commissioner,* 65 T.C. 278, 287 (1975), affd. 589 F.2d 1383 (10th Cir. 1978). Furthermore, in view of our conclusion, we have found it unnecessary to delve into the impact of certain provisions of the consolidated return regulations. See sec. 1.1502–4(d)(1)(iii) and (iv), Income Tax Regs., as in effect during 1972 and 1973.

[15]Consider the case of a corporate taxpayer who in one taxable year incurs the following gains and losses: $100 of domestic-source capital gain, $100 of foreign-source ordinary income, and $100 of foreign-source capital loss. Following petitioner's theory produces the anomalous result that 100 percent of the taxpayer's foreign taxes will be credited, regardless of their amount, even if that credit entirely offsets the taxpayer's tentative U.S. tax liability. Yet, this taxpayer has a taxable domestic income of $100, which, were it not for the foreign capital loss, would be taxable.

should be taken into account in computing the numerator of the pertinent fraction to the extent that they were deducted against U.S.-source capital gains.

*Decision will be entered under Rule 155.*