DOYLE, DANE, BERNBACH, INC. (AND DOMESTIC SUBSIDIARIES), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14077–78.     Filed July 21, 1982.

*Leonard A. Blank* and *David Zack*, for the petitioner.
*Barry C. Feldman*, for the respondent.

OPINION

TIETJENS, *Judge*: Respondent determined a deficiency of $394,887 in petitioner's Federal income tax for the year ended October 31, 1972. After concessions by the parties, the issues for decision are (1) whether, as an accrual method taxpayer,

petitioner must include in its gross income amounts representing claimed refunds of New York State franchise taxes and New York City general corporate taxes for the taxable year ended October 31, 1972, attributable to a net operating loss carryback from the taxable year ended October 31, 1975; and (2) whether, under sections 861 and 862,[1] the bad debt deduction which resulted from petitioner's payment on its guaranty of a loan to its wholly owned foreign subsidiary is allocable to foreign source income thereby reducing the maximum allowable foreign tax credit available to petitioner under section 904.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.[2] The stipulation of facts and exhibits are incorporated herein by reference. Petitioner and its domestic subsidiaries timely filed consolidated Federal corporate income tax returns for the taxable years ended October 31, 1972, and October 31, 1975, with the Director, Brookhaven Service Center.

Petitioner's return for the taxable year ended October 31, 1975, reflected a net operating loss of $1,891,413. On or about January 23, 1976, petitioner filed Form 1139, seeking to carry back the net operating loss of the taxable year ended October 31, 1975, to the taxable year ended October 31, 1972, as well as to carry back an unused investment credit from 1975 to 1972. A refund of $918,786, plus statutory interest, subsequently was tentatively allowed.

On October 31, 1975, based on the carryback of its net operating loss, petitioner was entitled to file claims for a refund of New York State franchise taxes and New York City general corporation taxes, for the taxable year ended October 31, 1972. New York State tax law and the regulations issued thereunder, as well as similar provisions applicable to the New

---

[1]All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, unless otherwise stated.

The parties agree that, in the event we determine that the portion of the net operating loss carryback to the taxable year ended Oct. 31, 1972, attributable to the bad debt deduction should be allocated to the petitioner's foreign source income from Germany, respondent's computation of the amount of the foreign tax credit reduction is correct.

[2]Unless otherwise indicated, any reference to Rules shall be deemed to refer to the Tax Court Rules of Practice and Procedure.

York City general corporation tax, provide limitations on the amount of a net operating loss which may be carried back.[3] According to the New York Tax Law article 27, section 1086, the New York State Tax Commission has the right to examine any refund claim before determining whether to allow such claim and the amount. A similar procedure exists with respect to the New York City general corporation tax. N.Y. City Admin. Code sec. R46–67.0.1. See also N.Y. City Admin. Code sec. R46–77.0.

Based upon the net operating loss carryback from 1975,[4] some time after October 31, 1975, petitioner filed a claim for refund of New York State franchise taxes for the taxable year ended October 31, 1972, in the amount of $419,949 and a similar claim for refund of New York City taxes in the amount of $334,916. Consequently, petitioner received a check from New York State in an amount approximating that which had been claimed. No refund, however, had been received from New York City.

Respondent examined petitioner's Federal income tax returns for the taxable years ended October 31, 1972, and October 31, 1975, and adjustments to income were made totaling $331,319 for the taxable year ended October 31, 1972, and $5,916 for the taxable year ended October 31, 1975. Petitioner had claimed and respondent had allowed a deduction for the New York State franchise taxes and the New York City general corporation taxes sought to be refunded for the taxable year ended October 31, 1972, on petitioner's Federal return filed for that year.

Petitioner filed its returns using the accrual method of accounting.

In or about April 1973, Snark Products GmbH (Snark), a wholly owned foreign subsidiary of the petitioner with offices in Germany, secured a loan from the Chase Manhattan Bank, N.A. Petitioner was required to execute a guaranty of the loan to Snark exposing it to a maximum liability of 2 million

---

[3]See N.Y. Tax Law art. 9A, sec. 208(f) (McKinney Supp. 1981); N.Y. City Admin. Code sec. R46–2.0, subdiv. 8(f).

[4]The parties agree petitioner is entitled to a net operating loss carryback from the taxable year ended Oct. 31, 1975, to the taxable year ended Oct. 31, 1972, of at least $1,131,287 as set forth in the statutory notice of deficiency.

Deutsche marks. Negotiations incident to the securing of the loan and the guaranty occurred in New York, N.Y. The loan proceeds were to be used by Snark for its working capital and were to be delivered to Snark at a branch of the Chase Manhattan Bank in Germany. Snark did no business in the United States.

Snark defaulted on payment of the loan and petitioner was required to, and did, pay $854,761 to the Chase Manhattan Bank, N.A., pursuant to the terms of the guaranty. The parties agree that petitioner is allowed a bad debt deduction in that amount in the taxable year ended October 31, 1975.[5]

Petitioner calculated the foreign tax credit under the per-country limitation method in the return for its taxable year ended October 31, 1972. Its gross income from West German sources for the taxable year ended October 31, 1975, was $587,791; the amount of its total gross income for that year being dependent upon a resolution of the first issue herein is either $37,118,682 (petitioner's figure) or an amount reflecting the inclusion of $419,273 and $334,937 in State and local tax refunds (respondent's position).

Firstly, petitioner argues that because its New York State and City refunds could have been disallowed in whole or in part as a result of an examination by the New York State Tax Commission, the New York City Department of Finance, or the Internal Revenue Service, all events fixing the right to such refunds had not occurred at October 31, 1975, and because, similarly, the amount thereof could not be determined with reasonable accuracy, petitioner, an accrual method taxpayer, should not include such potential tax refunds in its income for that year. Secondly, petitioner contends that the bad debt it suffered on its guaranty of the loan to Snark is allocable to U.S. sources because negotiations incident to the securing of the loan and the guaranty occurred in New York, N.Y., and, like gains from the sale of personal property which are derived entirely within the country in which the property is sold, losses from bad debts should be treated as allocated specifically to the country where transactions effecting the loss occurred. Alternatively, petitioner asserts that this bad

---

[5] A portion of petitioner's net operating loss in the taxable year ended Oct. 31, 1975, resulted from this bad debt deduction.

debt deduction should be apportioned on the basis of the ratio of gross income from West German sources to total gross income.

Respondent, by contrast, maintains, pursuant to section 451 and section 1.451–1(a), Income Tax Regs., that by the end of the taxable year ended October 31, 1975, all events had occurred which fixed petitioner's right to receive the New York State and City tax refunds and that the amounts could be determined with reasonable accuracy; therefore, respondent states petitioner must include the refunds in income for that year thereby reducing the available net operating loss carryback. Moreover, respondent argues that with regard to petitioner's guaranty of the loan to Snark, petitioner has not proved that the bad debt deduction was not allocable to foreign source income from Germany since, respondent contends, the place of negotiation is irrelevant and the purpose for which the funds were used is determinative.

Section 1.451–1(a), Income Tax Regs., provides that an accrual method taxpayer must include income in gross income both when all events fixing the right to receive tax income have occurred and when the amount of such income can be determined with reasonable accuracy.

Respondent's position, as stated in Rev. Rul. 65–190, 1965–2 C.B. 150, is that, for Federal income tax purposes, an accrual method taxpayer must include in income a refund of New York State corporation franchise taxes, resulting from a net operating loss carryback, in the taxable year of the loss effecting such a refund. The ruling requires inclusion in income in that year even though third persons might need to perform additional acts as long as it is reasonable to expect that these acts will be completed.

On the other hand, respondent's position in Rev. Rul. 62–160, 1962–2 C.B. 139, is that interest on a refund of Federal tax accrues when a taxpayer's right to receive such refund is ultimately determined. According to the ruling, the year of inclusion is the year that an authorized representative of the Internal Revenue Service certifies the allowance of an overassessment in respect of the tax.[6]

---

[6]The ruling states as exceptions to this precept (1) where a refund is made because of a settlement between the parties and (2) where a case is being litigated.

We need not dwell upon the seeming inconsistency between these two rulings because in the final analysis neither of them is binding upon us. See *Theo. H. Davies & Co. v. Commissioner*, 75 T.C. 443, 448 (1980), affd. per curiam 678 F.2d 1367 (9th Cir. 1982). To be sure, Rev. Rul. 65–190, *supra*, is of long standing and has been reaffirmed by Rev. Rul. 69–372, 1969–2 C.B. 104. But the fact of the matter is that Rev. Rul. 65–190, *supra*, by its very terms assumes "the validity of the taxpayer's transactions and the correctness of the figures so established." See Rev. Rul. 65–190, *supra*, 1965–2 C.B. at 151–152. This assumption, however, begs the very question which must be addressed in applying the "all events" test and is at the heart of the issue herein. Consequently, Rev. Rul. 65–190, *supra*, rests on a foundation which is shaky at best.[7]

The New York State Tax Commission has the right to examine any refund claim before deciding whether to allow the claim. N.Y. Tax Law art. 27, sec. 1086[8] (McKinney 1975). Moreover, both the New York State and City taxes at issue here are determined, substantially, although not entirely, by reference to taxable income for Federal income tax purposes. N.Y. Tax Law art. 9-A, sec. 208, subdiv. 9 (McKinney Supp. 1981). See *Telmar Communications Corp. v. Procaccino*, 48 A.D.2d 189, 369 N.Y.S.2d 208, 210 (1975); *American Can Co. v. State Tax Commission*, 37 A.D.2d 649, 323 N.Y.S.2d 6, 8 (1971). N.Y. City Admin. Code sec. R46–2.0.8 (1976). The New York State law allows a deduction of a net operating loss presumably equal to that allowed under section 172, I.R.C. 1954, as amended, but may not include any net operating loss prior to January 1, 1961, nor a loss incurred in any taxable year in which the taxpayer was not subject to the New York State franchise tax.

While we see nothing inconsistent with applying a standard of including income in an accrual-method taxpayer's gross income if only additional mechanical acts by third parties need to be completed, we find it arbitrary for respondent to assert

---

[7]We note that no such assumption is made in Rev. Rul. 62–160, 1962–2 C.B. 139, with respect to the foundation of a taxpayer's claim for refund so that it would appear that there is no real inconsistency between that ruling and Rev. Rul. 65–190, *supra*, 1965–2 C.B. 150.

[8]A similar procedure exists for the New York City general corporation tax. N.Y. City Admin. Code sec. R46–67.0.1. See also N.Y. City Admin. Code sec. R46–77.0.

that it is "reasonable to expect" the particular taxing authority's certification in the instance of New York State and City taxation, which is to a large degree dependent on decisions of Federal taxing authorities, when respondent concludes contrariwise in respect to Federal taxing authorities.

In *Masonite Corp. v. Fly*, an unreported case (S.D. Miss. 1961, 7 AFTR 2d 1146, 61–1 USTC par. 9355), the District Court held that an accrual method taxpayer's right to a refund of Mississippi income taxes was not fixed until the Mississippi attorney general, who had the ultimate discretion to approve refund claims, did in fact make such approval. The District Court properly distinguished *H. O. Boehme, Inc. v. Commissioner*, 15 T.C. 247 (1950), and *Kenyon Instrument Co. v. Commissioner*, 16 T.C. 732 (1951), wherein, under New York law, the right to a New York State franchise credit resulting from the renegotiation of the taxpayer's war contracts and the determination of excessive profits became fixed on the date of the renegotiation agreement and was not subject to approval of any New York official.

Therefore, under section 1.451–1(a), Income Tax Regs., we find that petitioner need not include in income refunds of New York State franchise taxes and New York City corporation taxes until the year the right to those refunds is ultimately determined.

The second issue to be determined herein is whether a bad debt deduction resulting from petitioner's guaranty of a loan to Snark is allocable to foreign source income for the purposes of determining the maximum allowable foreign tax credit.

Section 904(a) limits the amount of foreign taxes paid or accrued by a taxpayer which may be credited against U.S. tax. Section 904(a)(1) provided as follows:

SEC. 904(a). ALTERNATIVE LIMITATIONS.—

(1) PER-COUNTRY LIMITATION.—In the case of any taxpayer who does not elect the limitation provided by paragraph (2), the amount of the credit in respect of the tax paid or accrued to any foreign country or possession of the United States shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources within such country or possession (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

Sections 861 and 862, and the regulations thereunder, define "taxable income from sources within such country."

Section 861 provides, in part:

SEC. 861(a). GROSS INCOME FROM SOURCES WITHIN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States * * *

\*     \*     \*     \*     \*     \*     \*

(6) SALE OR EXCHANGE OF PERSONAL PROPERTY.—Gains, profits and income derived from the purchase of personal property without the United States * * * and its sale or exchange within the United States.

(b) TAXABLE INCOME FROM SOURCES WITHIN UNITED STATES.—From the items of gross income specified in subsection (a) as being income from sources within the United States there shall be deducted the expenses, losses and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses or other deductions which cannot definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as taxable income from sources within the United States.

Section 862 contains parallel provisions with respect to determining income from sources without the United States. Section 862(b) states:

SEC. 862(b). TAXABLE INCOME FROM SOURCES WITHOUT UNITED STATES.— From the items of gross income specified in subsection (a) there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto, and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income. The remainder, if any, shall be treated in full as taxable income from sources without the United States.

We agree with respondent that, in applying section 862(b) to determine if a deduction is allocable to foreign income, the test is whether the expense, loss, or other deduction was incurred to derive income from such a foreign source. See *Motors Ins. Corp. v. United States*, 208 Ct. Cl. 571, 530 F.2d 864 (1976).

In *De Nederlandsche Bank v. Commissioner*, 35 B.T.A. 53 (1936), the Board held that the taxpayer could not deduct, under sections 234(b) and 217(e), I.R.C. 1926, a prorated amount of losses incurred from loans to banks in Holland. Although not directly on point herein, *De Nederlandsche Bank v. Commissioner, supra,* involved a statute similar to section 862(b). In reaching its decision, the Board emphasized that to qualify for a deduction, the losses must be related to the earning of income in the United States; the Board did not base its decision, as petitioner herein contends, on the fact that negotiations for the loan occurred in Holland or on the fact that both the borrower and lender were Dutch.

We find that section 862(b) similarly requires the matching of deductions to the source of income. See also *Stockholms Enskilda Bank v. Commissioner*, 40 B.T.A. 107 (1939); *Royal Insurance Co., Ltd. v. Commissioner*, 38 B.T.A. 955 (1938). In the instant case, because the proceeds of the loan were delivered to Snark in West Germany to be used for its working capital, we find that the bad debt deduction resulting from petitioner's guarantee of the loan to Snark is allocable to foreign source income. In so doing, we reject petitioner's alternative argument seeking an apportionment on the basis of the ratio of gross income from West German sources to total gross income.

*Decision will be entered under Rule 155.*