**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

LIBERTY GLOBAL, INC.,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 24-9004

_____

**Appeal from the United States Tax Court**
**(CIR No. 341-21)**
_____

Parker Rider-Longmaid (Shay Dvoretzky, Rajiv Madan, Christopher Bowers, Nathan Wacker, and Sylvia O. Tsakos, with him on the briefs), Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C., for Petitioner-Appellant.

Judith A. Hagley (David A. Hubbert, Deputy Assistant Attorney General, Francesca Ugolini, and Jennifer M. Rubin, Attorneys, Tax Division, with her on the brief), Department of Justice, Washington, D.C., for Respondent-Appellee.

_____

Before **TYMKOVICH**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

    How much of the gain from a United States company's sale of stock in a

foreign company should be considered foreign-sourced?  Liberty Global says all of it.

That matters because after Liberty Global sold its controlling interest in a Japanese

company for $3.9 billion, it claimed all of the gain was foreign-sourced income, making it eligible for a $240 million tax credit.

The Commissioner of the Internal Revenue Service disagreed, characterizing all of the gain as U.S. income. Liberty Global challenged that determination in Tax Court, but the court agreed with the IRS.

Exercising jurisdiction under Internal Revenue Code § 7482(a), we **AFFIRM**. We agree with the Commissioner and the Tax Court that under the plain language of the Tax Code, Liberty Global cannot characterize the gain as foreign-sourced. It therefore is not eligible for the claimed tax credit.

# I.     Background

The United States taxes domestic corporations on income earned at home and abroad. In doing so, it gives corporations credit for foreign taxes paid to avoid double taxation and allows them to deduct foreign losses much of the time. This scheme is complex, as we explain.

## A.     Tax Code Provisions

### 1.     Foreign Income & Credits

When a U.S. corporation does business overseas, its activity is usually taxed both by the United States and the country in which it does business. The United States wants to incentivize corporations to incorporate in the United States even if they do business overseas. To avoid double taxation, the Tax Code credits the taxpayer for taxes paid on overseas income. The credit is capped—it does not apply to foreign taxes paid above the comparable U.S. tax rate. For example, if a U.S.

corporation has $100 in foreign income taxed by a foreign country at 40%, it only receives credit up to the U.S. rate at the time it reports its gain. Thus, if the U.S. rate is 35%, the corporation receives a $35 credit even though it paid $40 in taxes. I.R.C. § 904(a).

In addition to the tax rate cap, the foreign tax credit has another limitation: a maximum credit. Section 904 also limits the maximum credit by a formula tied to the corporation's *worldwide* taxable income. The ratio of the foreign tax credit to the taxpayer's U.S. tax liability cannot exceed the ratio of foreign income to the corporation's worldwide taxable income. The taxpayer's maximum credit can be calculated by this formula:

$$\text{Maximum Credit} = \frac{\text{Foreign-Source Income}}{\text{Worldwide Taxable Income}} \times \text{U.S. Taxes Owed.}$$

*Id.*; *see also Theo Davies & Co. v. Comm'r of Internal Revenue*, 75 T.C. 443, 444–45 (1980) (using the same formula). Section 904 is one of many provisions "designed to prevent the tax credit from reducing or eliminating the United States tax on income from sources within the United States." *Motors Ins. Corp. v. United States*, 530 F.2d 864, 869 (Ct. Cl. 1976) (quoting *Missouri Pac. R.R. v. United States*, 392 F.2d 592, 601 (Ct. Cl. 1968)).

To understand how this works, imagine a hypothetical corporate taxpayer with $1,000 in worldwide taxable income. At a 35% U.S. rate, it would owe $350 before any credit is applied. To calculate its maximum foreign tax credit, we need to know how much of its income is foreign-sourced—the numerator in the equation above. If

3

$100 of its income is foreign-sourced, its maximum credit under the formula is only $35:

$$\$35 = \frac{\$100}{\$1000} \times \$350.$$

But, if $500 of its income is foreign-sourced, its maximum credit jumps to $175:

$$\$175 = \frac{\$500}{\$1000} \times \$350.$$

So the amount of foreign-sourced income determines the maximum credit. If 10% of a taxpayer's income is foreign-sourced, it can write off up to 10% of its tax bill. But if 50% of its income is foreign-sourced, it can write off up to 50%. The more foreign-sourced income, the larger the credit. And, relevant here, if a taxpayer has no foreign-sourced income, it cannot take any foreign tax credit at all. In that case, the numerator in the equation is zero, so the result is a zero-dollar credit:

$$\$0 = \frac{\$0}{\$1000} \times \$350.$$

### 2.    *Foreign Losses*

U.S. corporations can also deduct foreign losses, reducing the taxes a corporation owes on domestic income. But the foreign loss deduction used by a corporation in previous years must be repaid—recaptured—when the corporation generates foreign income in the future. When a U.S. corporation uses foreign losses to reduce its tax bill, the Tax Code records this as "overall foreign loss." I.R.C. § 904(f)(2). Over time, taxpayers track their overall foreign loss balance. In future years where there are gains, foreign-source income is recharacterized—re-sourced—

4

as U.S.-source income to reduce the overall foreign loss balance. I.R.C. § 904(f)(1). This reduces the numerator in the equation above and reduces the maximum credit as a result. So the taxpayer has a choice, it can deduct the foreign loss now or take the foreign tax credit later, but not both.

Let's apply this to our hypothetical taxpayer from before. Again, assume it has $1,000 in total income, owes $350 in U.S. tax, and has $100 in foreign-sourced income:

$$\$35 = \frac{\$100}{\$1000} \times \$350.$$

But now assume in a previous year that it deducted $50 in foreign loss. To recapture the $50 in the taxpayer's overall foreign loss account, the Tax Code re-sources $50 of the foreign-sourced income to U.S.-sourced. That re-sourcing functionally subtracts the $50 from the numerator in the equation, and thus reduces the taxpayer's maximum credit:

$$\$17.50 = \frac{\$100 - \$50}{\$1000} \times \$350.$$

In all of the above examples, the taxpayer's total worldwide income never changes. The only variable that changes is how much of that income is deemed foreign-sourced and therefore the amount of the foreign-source credit.

### 3.    *Income Sourcing Legal Framework*

The Tax Code and explanatory regulations contain a detailed set of rules to determine whether income is foreign-sourced. *See generally* I.R.C. §§ 861–865; 26

C.F.R. § 1.861-1 *et seq.* This framework tries to capture all income that is subject to double taxation and no income that is not.

This case is about capital gains from selling stock in a foreign corporation controlled by a U.S. corporation. The parties agree on the general rule—gain from the sale of personal property, which includes the gain here, is sourced by the domicile of the seller. I.R.C. § 865(a). Stated plainly, gain from stock sold by a U.S. corporation is ordinarily U.S.-sourced.

But there are exceptions to this rule. At issue is § 904(f)(3)(A)(i), which changes some income to foreign-sourced so that it can be used to recapture the outstanding overall foreign loss balance. Under this framework, when a U.S. corporation sells foreign stock, any gain must first be applied to the corporation's overall foreign loss account balance. After the overall foreign loss balance is zero, then the question remains: what remaining gain is eligible for treatment as foreign-source income?

In relevant part, § 904(f) provides the statutory framework for establishing the tax credit formula. In (f)(1), the general rule requires the taxpayer to recapture overall foreign loss when, in later years, it receives foreign-sourced income. That provision provides:

> (f) Recapture of overall foreign loss.--
>> (1) General rule.--For purposes of this subpart, in the case of any taxpayer who sustains an overall foreign loss for any taxable year, that portion of the taxpayer's taxable income from sources without the

6

> United States for each succeeding taxable year which is equal to the lesser of--
>
> (A) the amount of such loss (to the extent not used under this paragraph in prior taxable years), or
>
> (B) 50 percent (or such larger percent as the taxpayer may choose) of the taxpayer's taxable income from sources without the United States for such succeeding taxable year,
>
> shall be treated as income from sources within the United States (and not as income from sources without the United States).

§ 904(f)(1).

The statute goes on to provide that those profits from the sale of overseas property—foreign capital gains—can also be used to recapture overall foreign loss. But these gains are not always recognized or can sometimes be U.S.-sourced.  So § 904(f)(3) provides a special recognition rule that first categorizes at least some gain as foreign-sourced so that it can be used to recapture overall foreign loss.  In full, the provision provides:

> (3) Dispositions.--
>
> (A) In general.--For purposes of this chapter, if property which has been used predominantly without the United States in a trade or business is disposed of during any taxable year--
>
> (i) the taxpayer, ***notwithstanding*** any other provision of this chapter (other than paragraph (1)), *shall be deemed* to have received and recognized taxable income *from sources without the United States* in the taxable year of the disposition, by reason of such disposition, ***in an amount equal to the lesser of the excess*** of the fair market value of such property over the taxpayer's adjusted basis in such property ***or the remaining amount of the overall foreign losses*** which were not used under

7

> paragraph (1) [carryover amounts] for such taxable year or any prior taxable year, and
>
> (ii) paragraph (1) shall be applied with respect to such income by substituting "100 percent" for "50 percent."

§ 904(f)(3) (emphases added).

As is often the case, the Department of the Treasury has promulgated tomes of regulations to clarify and gap-fill where the statute is unclear or silent. The regulation applicable here states only that, "gain will be recognized on the disposition of such property" and "such gain will be treated as foreign source income subject to the same limitation as the income the property generated." Income Taxes; Recapture of Overall Foreign Losses, 52 Fed. Reg. 31992-01 (August 25, 1987) (hereinafter cited as § 1.904(f)-2(d)(1)(i)–(iii)).[1]

The parties agree that under § 904(f)(3), at least some gain is sourced abroad, only to be re-sourced back to the United States by § 904(f)(1) to recapture the overall foreign loss account. When, as here, the gain is initially U.S.-sourced, the process can be represented visually like this:



§ 904(f)(3)                                    § 904(f)(1)

U.S.-sourced income        Foreign-sourced income        U.S.-sourced income

---

[1] The applicable regulations were amended in 2007 and again in 2012. But the applicable regulations in 2010 were the rules promulgated in 1987. *See* 52 Fed. Reg. 31,992 (1987).

The statutory question in this case centers on § 904(f)(3)(A)(i)'s "notwithstanding" language and how it sources the proceeds from Liberty Global's stock sale that exceed its overall foreign loss balance.

### B.    *Liberty Global's Tax Return*

Liberty Global is a U.S. corporation and the parent company of other corporations around the world.  Liberty Global owned a controlling majority stake in Jupiter Telecommunications (J:COM), a Japanese company, making J:COM a controlled foreign corporation for tax purposes.  In February 2010, Liberty Global sold its entire interest in J:COM for $3.9 billion, realizing a gain of $3.2 billion.[2] Liberty Global timely filed its 2010 taxes and reported the gain as follows:

- $438 million was characterized as a foreign-source dividend, and

- $2.8 billion was treated as foreign-source capital gain.  Of that,

    - $474 million was re-sourced to the United States to recapture overall foreign losses, and

    - $2.3 billion remained foreign-source capital gain.

Because Liberty Global claimed $2.3 billion in foreign-sourced income, it could also claim a $240 million foreign tax credit under the formula discussed above.

---

[2] All dollar amounts in this opinion are approximate.  The facts and amounts are not at issue here.

The Commissioner of Internal Revenue issued a notice of deficiency for that $240 million credit. He asserted that the $2.3 billion in excess of the overall foreign loss account balance was U.S.-sourced. He reasoned that § 904(f)(3) explicitly limited itself to "the lesser of" the gain and the overall foreign loss balance. As a result, he concluded Liberty Global had no other foreign-sourced income and so could not claim any foreign tax credit.

Liberty Global challenged the deficiency in Tax Court. The parties submitted the case on a fully stipulated record and disputed only one legal question—does § 904(f)(3) apply to the excess gain above the overall foreign loss balance?

## II.    Discussion

Liberty Global offers a three-step argument in support of its position.

*First*, § 904(f)(3)(A)(i) is silent about the treatment of the excess gain.

*Second*, the "notwithstanding" clause in § 904(f)(3)(A)(i) means that the background sourcing rules do not apply to the excess gain.

*Third*, because of this statutory silence, Treasury is empowered to issue gap-filling regulations, and the applicable regulation suggests that *all gain* becomes foreign-sourced. Since the income from J:COM was considered foreign-sourced, Liberty Global argues that the regulations require that the gain is also foreign-sourced.

The Commissioner agrees that the statute is silent as to the excess gain. But he argues that Liberty Global overreads the "notwithstanding" clause. He reads the notwithstanding clause to only override other provisions of the Code if there is a

10

conflict. And here, he says, there is no conflict, so the background provisions apply, and background principles are clear that the gain will be characterized as U.S.-sourced income. He finishes by asserting that the regulations cannot be read to conflict with the statute, so they cannot support Liberty Global's interpretation.

Despite a complicated statutory and regulatory framework, the $240-million question is simple: what does "*notwithstanding*" mean?

### A.    *Section 904 Framework*

We review decisions of the United States Tax Court in the same manner as we do decisions of the district courts. I.R.C. § 7482(a)(1). The only issue in this case is the interpretation of a federal statute, which we review de novo. *True Oil Co. v. Comm'r of Internal Revenue*, 170 F.3d 1294, 1298 (10th Cir. 1999).

The parties agree that § 904(f)(3)(A)(i) does not explicitly source the gain above the overall foreign loss account balance—so do we. The amount of foreign-source gain recognized is limited to "the lesser of [the gain from the sale] or the remaining amount of the [taxpayer's overall foreign loss account]."
§ 904(f)(3)(A)(i).

No doubt Liberty Global's gain was greater than its overall foreign loss account ($2.8 billion and $474 million, respectively). So the statute explicitly sources $474 million as foreign-sourced. But the statute says nothing about how to characterize the gain in excess of the overall foreign loss account.

### B.    The "Notwithstanding" Clause

In that silence, the Commissioner argues we default to the background rule in the Tax Code. The background sourcing rule comes from I.R.C. § 865(a):

> (a) General rule.--Except as otherwise provided in this section, income from the sale of personal property--
>
> > (1) by a United States resident shall be sourced in the United States, or
> > (2) by a nonresident shall be sourced outside the United States.

Under this provision, the Commissioner argues that the excess gain should be U.S.-sourced because Liberty Global is a U.S. resident.

Liberty Global disagrees, claiming that the background rules do not apply because § 904(3)(A)(i) applies "notwithstanding any other provision of this chapter." And Liberty Global argues Treasury has promulgated regulations to fill that statutory gap.

We agree with the Commissioner. As an initial matter, case law helps us understand the scope of statutory "notwithstanding" clauses. Both Supreme Court and our precedents are clear that a notwithstanding clause signals which provision prevails in the event of a conflict. *See, e.g.*, *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 126–127 (2012)) ("In statutes, the word [notwithstanding] 'shows which provision prevails in the event of a clash.'"); *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the

12

drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."); *United States v. Dolan*, 571 F.3d 1022, 1026 (10th Cir. 2009) (same), *aff'd*, 560 U.S. 605 (2010).  So the notwithstanding clause displaces the background rules—but only if two provisions conflict.

In Liberty Global's reading, the statute *preempts* all other provisions of the Code.  But we find two problems with that argument: (1) § 904(f) limits its own applicability, and (2) Liberty Global itself does not entirely embrace its own interpretation.

First, the provision expressly applies only to "an amount equal to the lesser of" the gain or the overall foreign loss account.  § 904(f)(3)(A)(i).  Applying Liberty Global's interpretation would mean the statute always applies to the full value of the sale, not the lesser of the two, making much of the provision superfluous.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation modified)).  We cannot read the limiting provision out of the statute.

Second, Liberty Global argues that the rest of the Tax Code is displaced by this provision while at the same time it still applies other provisions.  Recall that Liberty Global reported $3.2 billion in gain from the sale; claiming that $474 million offsets the overall foreign loss account, and that $2.3 billion is foreign source capital gain.  But there is an additional $438 million that Liberty Global treated as a foreign-

13

source dividend pursuant to § 1248.[3]  Applying § 1248 in this fashion conflicts with Liberty Global's argument that the notwithstanding clause displaces the entirety of the Code.

We think § 904(f)(3) sources only the lesser of the gain and the overall foreign loss account.  The parties agree that the relevant $474 million that offsets the overall foreign loss account is U.S.-sourced.  And, as explained above, the parties agree the provision is silent about the source of the excess gain.

Since § 904(f)(3)(A)(i) is *silent* about the excess gain's sourcing, it cannot possibly conflict with any other provisions.  That is the fatal flaw in Liberty Global's argument.  Liberty Global tries to argue both that § 904(f) is *silent* so the regulations apply, and that it *conflicts* with § 865(a) so it does not apply.  There is no conflict through silence, so Liberty Global cannot have it both ways.

We agree with the Commissioner and Tax Court that § 865(a) applies, and the excess gain is U.S.-sourced.  Without that $2.8 billion in foreign-sourced capital gains, Liberty Global is like our hypothetical taxpayer above with no foreign-sourced income:

---

[3] The Commissioner does not contest Liberty Global's characterization of the $438 million.  When Liberty Global sold J:COM, J:COM had undistributed earnings—likely cash that it had not yet paid out as dividends or used for another purpose.  Upon sale, § 1248 converts Liberty Global's share of the undistributed earnings from capital gains to dividend income because if Liberty Global had not sold J:COM, it could have received that amount as a dividend.  *See* I.R.C. § 1248.

$$\$0 = \frac{\$0}{\$1000} \times \$350.$$

No matter how much worldwide income it has or how much provisional U.S. tax it owes, Liberty Global cannot claim a foreign tax credit without any foreign income.

### C.    Tax Code Regulations

Liberty Global's argument ultimately rests on the then-applicable regulations. The relevant regulation stated:

> (d) Recapture of overall foreign losses from dispositions under section 904(f)(3)—
>
> > (1) In general. If a taxpayer disposes of property used or held for use predominantly without the United States in a trade or business during a taxable year and that property generates foreign source taxable income subject to a separate limitation to which paragraph (a) of this section is applicable,
> >
> > > (i) *gain will be recognized* on the disposition of such property,
> > >
> > > (ii) *such gain will be treated as foreign source income* subject to the same limitation as the income the property generated, and
> > >
> > > (iii) the applicable overall foreign loss account shall be recaptured as provided in paragraphs (d)(2), (d)(3), and (d)(4) of this section.

Treas. Reg. § 1.904(f)-2(d)(1)(i)–(iii) (1987) (emphases added).

Liberty Global claims that this regulation seals its argument. It contends that the regulation broadly provides that "gain will be recognized" and "such gain will be treated as foreign source income." *Id*. In statutory silence, Liberty Global reads "gain" and "such gain" without limitation. It asserts that without any limitation,

15

under the regulation, all gain from the sale "will be treated as foreign source income." § 1.904(f)-2(d)(1)(ii).

But we have already rejected Liberty Global's argument that the statute is ambiguous and that § 904(f) displaces § 865. Given this, "the agency's regulations can only implement the statute's commands, not vary from them." *Whirlpool Fin. Corp. v. Comm'r of Internal Revenue*, 19 F.4th 944, 952–53 (6th Cir. 2021). Liberty Global's interpretation of the regulations would broaden § 904(f) well beyond the statutory language and create a conflict with § 865. Instead, we interpret the regulation "so as to harmonize with and further and not to conflict with the objective of the statute it implements." *Joy Techs., Inc. v. Sec'y of Lab.*, 99 F.3d 991, 996 (10th Cir. 1996) (citation omitted).

Reading the regulations in harmony, the "gain . . . recognized" by the regulations is the same as the "recognized taxable income" in § 904(f)(3)(A)(i). And since the statute limits the recognized income to "the lesser of" the gain from the sale and the remaining amount of overall foreign losses, *id.*, so too is the gain recognized by the regulations. Any other reading would allow the regulations to alter the plain reading of the statute.

In sum, § 904(f) requires the gain remaining after the overall foreign loss account is zeroed out to be treated as U.S.-sourced income.

## III.  Conclusion

For these reasons, we affirm the Tax Court's judgment.