T.C. Memo. 2016-60

UNITED STATES TAX COURT

NUTRITION FORMULATORS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 28594-12L, 2589-13L,         Filed April 4, 2016.
3719-14L.

<u>Mitchell Stuart Fuerst</u>, <u>Joseph A. DiRuzzo III</u>, <u>Jennifer Correa Riera</u>, and

<u>Marielys D. Rosado Barreras</u>, for petitioner.

<u>Michelle M. Robles</u>, <u>William Lee Blagg</u>, and <u>Derek P. Richman</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  In these consolidated cases, petitioner seeks review of

respondent's determination to proceed with collection by lien and/or levy of its

[*2] outstanding tax liabilities for the periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31, June 30, and December 31, 2012.[1]

Petitioner subsequently satisfied its liability, including the penalty and accrued interest, for the period ending June 30, 2012, and respondent released the lien for this period. Therefore, we no longer have jurisdiction to examine respondent's determinations for this period because no amount remains subject to collection. See Kelby v. Commissioner, 130 T.C. 79, 84-85 (2008); Greene-Thapedi v. Commissioner, 126 T.C. 1, 7 (2006); Hefti v. Commissioner, 97 T.C. 180, 191 (1991), aff'd, 983 F.2d 868 (8th Cir. 1993).

Petitioner's collection due process (CDP) hearings were conducted by three different settlement officers, SO1, SO2, and SO3. The first hearing, CDP hearing 1, was conducted by SO1 and covered respondent's notice of Federal tax lien (NFTL) filings and proposed levy action for the tax periods ending June 30, 2007, and June 30, September 30, and December 31, 2011. The second hearing, CDP hearing 2, was conducted by SO2 and covered respondent's NFTL filings and proposed levy action for the tax periods ending March 31 and June 30, 2012. The

---

[1]All section references are to the Internal Revenue Code (Code) as in effect at all relevant times, and all Rule References are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*3] third hearing, CDP hearing 3, was conducted by SO3 and covered respondent's proposed levy action for the tax period ending December 31, 2012.

The issues for decision are whether the SOs abused their discretion in sustaining the NFTL filings and proposed levy actions for the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31, 2012, and the proposed levy action for the tax period ending December 31, 2012, and whether respondent should abate petitioner's additions to tax and penalties for some of these periods.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner's principal place of business was in Florida when its petitions were timely filed.

Brief Background

Petitioner is a dietary supplement manufacturer with fewer than 500 employees. On June 25, 2007, the Food and Drug Administration (FDA) issued a final agency rule regarding current good manufacturing practices for dietary supplements. See 72 Fed. Reg. 34752 (Jun. 25, 2007). The rule set forth manufacturing, packaging, labeling, and quality control requirements for dietary

[*4] supplement manufacturers.  The compliance date for businesses with fewer than 500 employees, but 20 or more full-time employees, was June 25, 2009.

In March 2008 petitioner discovered that its former accountant had embezzled funds from its business.  On February 19, 2009, the accountant entered a plea of no contest to a charge of second degree grand theft and was ordered to pay $80,000 in restitution to petitioner.  The case was resolved in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida, No. F08-13681.  Petitioner claims the accountant stole over $1 million but did not offer records showing the amount of its claim.

Petitioner moved its manufacturing operations in 2010.  As a result of the move, it incurred $1.56 million in construction debt to Wells Fargo and moving expenses, including additional expenses for employees.  Its debt obligation to Wells Fargo limited its ability to pay its suppliers, its creditors, and the Internal Revenue Service (IRS).

Petitioner argues that it was forced to move because it was not able to retrofit its manufacturing plant to comply with the FDA regulations.  Petitioner argues that its distressed financial position caused it to contemplate a merger with a pharmaceutical company, but the merger ultimately fizzled out.  Petitioner,

[*5] however, provided limited information about the merger to the IRS, stating that its details were confidential.

Petitioner's Outstanding Tax Liabilities, NFTLs, and Notices of Intent To Levy

For tax years 2007-12, petitioner was required to file Forms 941, Employer's Quarterly Federal Tax Return. As part of its tax obligation, petitioner had to pay quarterly the employment taxes it reported on Forms 941 and to make Federal tax deposits of its employment taxes to the IRS throughout each quarter.

Petitioner filed late Forms 941 for the tax periods ending June 30, 2007 and 2011. Petitioner did not timely make Federal tax deposits and did not timely pay its employment taxes for the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31 and December 31, 2012. Petitioner did not timely make Federal tax deposits for the tax period ending June 30, 2012.

For tax years 2010-12, petitioner filed Forms 1120S, U.S. Income Tax Return for an S Corporation, and claimed tax loss deductions of $500,910, $641,643, and $89,540, respectively. These same years it claimed depreciation deductions of $873,110, $593,808, and $190,505, respectively.

Respondent assessed additions to tax for petitioner's failure to timely file Forms 941 for the tax periods ending June 30, 2007 and 2011. Respondent assessed penalties for petitioner's failure to timely make tax deposits and assessed

[*6] additions to tax for petitioner's failure to timely pay employment taxes for the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31 and December 31, 2012. Respondent assessed penalties for petitioner's failure to timely make tax deposits for the tax period ending June 30, 2012. Thereafter, respondent filed NFTLs for the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31 and June 30, 2012. Respondent mailed petitioner Letters 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320, advising it of the recorded liens.

Respondent also mailed petitioner Letters 1058, Final Notice -- Notice of Intent to Levy and Notice of Your Right to a Hearing, for collection of its unpaid liabilities for these same tax periods and the tax period ending December 31, 2012. In response to these notices, petitioner timely submitted to respondent Forms 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing requests).

CDP Hearing 1

CDP hearing 1 was conducted by SO1 and covered liens and the proposed levy action for tax periods ending June 30, 2007, and June 30, September 30 and December 31, 2011. Petitioner submitted multiple CDP hearing requests for these

**[*7]** tax periods. In its requests petitioner repeatedly asked for: (1) an affordable payment agreement acceptable to respondent; (2) penalty abatement; and (3) withdrawal of the NFTLs. The CDP hearing requests each included a copy of the "Loan Closing Statement" between Wells Fargo and petitioner.

SO1 scheduled a telephone CDP hearing for July 25, 2012, and requested certain financial documentation from petitioner before the hearing, including (1) Form 433-B, Collection Information Statement for Businesses, with attachments, (2) Form 941 for the period ending June 30, 2012, (3) proof of Federal tax deposits for periods ending June 30 and September 30, 2012; and (4) proof of Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, payments for 2012. The parties thereafter agreed to reschedule the CDP hearing to August 8, 2012.

On July 30, 2012, petitioner provided Form 433-B with the requisite attachments and Form 941 for the period ending June 30, 2012. On Form 433-B petitioner reported income of $782,014 and expenses of $738,873 for June 2012. Petitioner also provided a spreadsheet purporting to show Federal tax deposits for periods ending June 30 and September 30, 2012, and Form 940 payments for 2012.

**[*8]**  On August 8, 2012, SO1 held a telephone CDP hearing with petitioner's counsel.  During the call, petitioner's counsel stated that petitioner wanted an installment agreement of $20,000 per month.  SO1 stated that she did not have a problem with the proposal as long as the balances would be fully paid within 72 months and petitioner could establish current compliance with its tax obligations.  SO1 examined petitioner's records and confirmed that it had not made Federal tax deposits for the tax period ending March, 31, 2012.  Petitioner did not propose any other collection alternative.

On September 12, 2012, petitioner's counsel provided additional documentation to SO1 including:  (1) proof of filing Form 941 for the period ending June 30, 2012; (2) proof of Federal tax deposits for the period ending September 30, 2012; (3) proof of funds lent to petitioner when petitioner's new facility was undergoing construction; and (4) an explanation of how petitioner's former accountant used checks made out to "cash" as a way to embezzle funds from petitioner.

On September 25, 2012, SO1 spoke to petitioner's counsel and requested that petitioner provide a copy of its 2011 income tax return by October 2, 2012.  SO1 stated that she would recommend to her manager an abatement of the failure to deposit penalty and failure to pay addition to tax for the period ending June 30,

[*9] 2007, because petitioner's former accountant had embezzled money from petitioner during that time. SO1 did not believe abatement of any other penalties or additions to tax was warranted. SO1 stated that she would be willing to accept an installment agreement of $20,000 per month even though petitioner's financial information showed it could pay twice that amount. Petitioner's counsel explained that petitioner was working on a merger and that it would be able to fully pay its outstanding liabilities within a few months. Petitioner's counsel told SO1 that he did not want to commit to an installment agreement without speaking to petitioner. SO1 asked petitioner's counsel to let her know by October 2, 2012, how he wanted to proceed.

On October 2, 2012, petitioner's counsel told SO1 that it would take some time to complete the merger and that he wanted her to issue a notice of determination. Petitioner did not propose any other collection alternative at that time. Petitioner did not provide SO1 with a copy of its 2011 tax return or any information about the potential merger.

On October 22, 2012, SO1 sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), sustaining the lien filings and proposed levies. SO1 agreed to abate the failure to deposit penalty and failure to pay addition to tax for the period

**[*10]** ending June 30, 2007, but denied abatement of any other penalties and additions to tax for the tax periods covered by this CDP hearing.

CDP Hearing 2

CDP hearing 2 was conducted by SO2 and covered liens and the proposed levy action for tax periods ending March 31 and June 30, 2012. Among petitioner's four CDP hearing requests for these tax periods were requests for penalty abatement and withdrawal of the NFTLs. In the requests petitioner stated that it was undertaking a merger with a third party that would pay its outstanding taxes at the closing of the merger. Petitioner argued that the IRS should cease all collection action before the closing of the proposed merger since its interest was protected by previous liens filed. Petitioner did not request an installment agreement, an offer-in-compromise, or any other collection alternative. The CDP hearing requests also contained a copy of the "Loan Closing Statement" between Wells Fargo and petitioner.

SO2 scheduled a telephone CDP hearing for December 13, 2012, and requested certain documentation from petitioner before the hearing, including proof of petitioner's current Federal tax deposits and verification of its claim that a third party would fully pay the outstanding liabilities.

**[*11]** On December 6, 2012, petitioner sent a package of documents to SO2 with a corresponding letter. In the letter, petitioner's counsel indicated that petitioner would not provide documents related to petitioner's potential merger. The documents included a Form 433-B in which petitioner reported income of $782,014 and expenses of $738,873 for the month of June 2012. The following day, petitioner provided another batch of documents. These documents included a copy of Form 941 for the tax period ending September 30, 2012, and proof of Federal tax deposits for petitioner's Form 940 FUTA tax liability for the period ending December 31, 2012.

On December 13, 2012, SO2 conducted a telephone hearing with petitioner's counsel during which petitioner's counsel expressed interest in an installment agreement in the event that the merger did not occur. When SO2 asked when petitioner's merger would be completed, petitioner's counsel responded that he was unsure. Petitioner's counsel did not provide any details regarding petitioner's potential merger or when it might close. SO2 confirmed that petitioner was not in current compliance on its Federal tax deposits for its Form 941 tax liabilities for the periods ending March 31 and December 31, 2012 and that it was precluded from seeking collection alternatives. SO2 concluded that petitioner had not provided adequate evidence to warrant abatement of the failure

[*12] to deposit penalties because it could not show that the FDA regulations had required it to move--i.e., that its prior facility was not adequate to meet the FDA regulations. SO2 stated that the NFTLs were filed in accordance with all legal and procedural requirements and were necessary to protect the Government's interest in petitioner's assets.

On December 31, 2012, SO2 sent to petitioner four notices of determination sustaining the lien filings and proposed levies for the tax periods ending March 31 and June 30, 2012. The notices of determination stated that: (1) petitioner was not eligible for collection alternatives because petitioner was not in current compliance on its Federal tax deposits; (2) petitioner had failed to provide documents relating to petitioner's potential merger; and (3) petitioner's request for penalty abatement was denied because petitioner had provided no evidence warranting abatement.

On June 18, 2013, petitioner paid its outstanding liability, including the failure to deposit penalty, for the tax period ending June 30, 2012. On July 5, 2013, respondent released the lien for this period.

CDP Hearing 3

CDP hearing 3 was conducted by SO3 and covered the proposed levy action for the tax period ending December 31, 2012. In its CDP hearing request for this

[*13] tax period, petitioner requested an installment agreement; it did not request any abatement of the additions to tax or penalty assessed by respondent.

SO3 scheduled a telephone CDP hearing for December 3, 2013, and requested certain documentation from petitioner before the hearing, including a completed Form 433-B with supporting financial documentation for the prior three months.

On December 3, 2013, at the request of petitioner's counsel, SO3 agreed to reschedule the telephone CDP hearing for December 19, 2013, and extend the deadline for providing financial information. SO3 explained that the information had to be received before the rescheduled telephone CDP hearing. Petitioner's counsel agreed to provide the requested financial information before the rescheduled hearing but failed to do so.

On December 19, 2013, SO3 conducted a telephone CDP hearing with petitioner's counsel. SO3 explained that she could not determine whether an installment agreement was appropriate because petitioner had never provided the requested financial information. SO3 asked petitioner's counsel whether petitioner was challenging the liability and petitioner's counsel said it was not. Petitioner did not request any other collection alternatives.

[*14] On January 21, 2014, SO3 sent petitioner a notice of determination sustaining the proposed levy. The notice explained that petitioner had failed to provide information requested by SO3 and that she was therefore unable to determine either petitioner's ability to pay or an appropriate collection alternative. The notice also stated that petitioner did not dispute the amount of its liability.

OPINION

Section 6301 empowers the Commissioner to collect taxes imposed by the internal revenue laws. To further that objective, Congress has provided that the Commissioner may effect the collection of taxes by, among other methods, liens and levies. Section 6321 imposes a lien in favor of the United States on all property and property rights of a taxpayer liable for taxes after a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes. The lien arises at the time assessment is made and continues until the liability is satisfied or becomes unenforceable by lapse of time. Sec. 6322. The filing of an NFTL ensures priority of the Federal tax lien over claims of most competing creditors. See sec. 6323. Section 6331(a) authorizes the Commissioner to levy upon all property or property rights of any taxpayer liable for any tax who neglects or refuses to pay that liability within 10 days after notice and demand for payment.

[*15] When the Commissioner pursues collection by lien or levy, he must notify the affected taxpayer in writing of his or her right to a CDP hearing with an impartial officer from the IRS Office of Appeals. See secs. 6320(a) and (b) (relating to liens), 6330(a) and (b) (relating to levies). Where a hearing is requested, whether in response to an NFTL filing or a proposed levy, the presiding Appeals officer must satisfy the standards set forth in section 6330. See secs. 6320(c), 6330(c).

Specifically, as part of the CDP hearing, the Appeals officer must take into consideration: (1) verification that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer concerning the collection action; and (3) whether the proposed collection action balances the need for the efficient collection of tax with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). Relevant issues may include appropriate spousal defenses, challenges to the appropriateness of the collection actions, and potential collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). The Appeals officer also may decide to withdraw an NFTL when circumstances permit. See sec. 6323(j). Withdrawal is permissible when, among other things, the Secretary determines that the "withdrawal of such notice will

[*16] facilitate the collection of the tax liability" or "the withdrawal of such notice would be in the best interests of the taxpayer * * * and the United States." Id.

During the CDP hearing, a taxpayer may challenge the existence or amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have the opportunity to dispute the liability. Sec. 6330(c)(2)(B). A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect. See Gray v. Commissioner, 138 T.C. 295, 300 (2012); Katz v. Commissioner, 115 T.C. 329, 338-339 (2000). Where the validity of the underlying liability is properly at issue during the hearing, we review Appeals' determination of that issue de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). The taxpayer has the burden of proof regarding challenges to its underlying liabilities. See Rule 142(a).

I.    Review of Penalties and Additions to Tax Assessed Against Petitioner

At the outset we note that respondent agreed to abate the section 6656(a) penalty and the section 6651(a)(2) addition to tax for the tax period ending June 30, 2007, because of petitioner's former accountant's embezzlement around that time. We also note that petitioner failed to challenge the section 6656(a) penalty and section 6651(a)(2) addition to tax for the tax period ending December 31,

**[*17]** 2012, during CDP hearing 3 or in its briefs. Therefore, petitioner's underlying penalty and addition to tax for that period are not properly before the Court. See Rule 331(b)(4); secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also McLaine v. Commissioner, 138 T.C. 228, 243 (2012).

That leaves us to consider the section 6651(a)(1) additions to tax for tax periods ending June 30, 2007 and 2011, and the section 6656(a) penalties and the section 6651(a)(2) additions to tax for tax periods ending June 30, September 30, and December 31, 2011, and March 31, 2012. We review these challenges de novo. See Sego v. Commissioner, 114 T.C. at 610.

Section 6656(a) imposes a penalty for failing to timely make a required deposit of taxes in an authorized Government depository unless the failure was due to reasonable cause and not willful neglect. Section 6651(a)(2) imposes an addition to tax for failing to pay taxes shown on a return on or before the date prescribed (taking into account any extension of time for payment), unless it is shown that the failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(1) provides for an addition to tax for failure to timely file a return, unless it is shown that the failure is due to reasonable cause and not due to willful neglect.

**[*18]** In evaluating reasonable cause under section 6656, the Court looks to the analogous provisions of section 6651(a)(2). See Stevens Techs., Inc. v. Commissioner, T.C. Memo. 2014-13. Reasonable cause exists for purposes of section 6651(a)(2) if the taxpayer makes a satisfactory showing that it exercised ordinary business care and prudence in providing for payment of its tax liability but nevertheless either was unable to timely pay the tax or would suffer undue hardship if the payment was made on time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Reasonable cause exists for purposes of section 6651(a)(1) if the taxpayer makes a satisfactory showing that it exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

For the remaining penalties and additions to tax at issue, petitioner essentially makes the same arguments to show it had reasonable cause as it makes to show respondent's purported abuse of discretion. Petitioner argues mainly that its former accountant embezzled more than what she was ordered to pay in restitution and that SO1 agreed with this assessment. This would be relevant if petitioner was able to show that the embezzlement affected its ability to pay employment taxes for tax years 2011 and 2012, but petitioner was not able to do so. Petitioner also argues that it incurred a large amount of debt while moving its

[*19] manufacturing operations in order to comply with FDA regulations. But petitioner did not show the SOs that it was required to move because of the FDA regulations or that the costs incurred to move affected its ability to timely file its tax returns or pay taxes. Without more, we hold that petitioner does not have reasonable cause for its failure to timely file tax returns, timely make Federal tax deposits, and timely pay taxes. Accordingly we hold petitioner liable for the section 6651(a)(1) additions to tax for tax periods ending June 30, 2007 and 2011, and the section 6656(a) penalties and 6651(a)(2) additions to tax for tax periods ending June 30, September 30, and December 31, 2011, and March 31, 2012.

II.     Review of Appeals' Determinations to Sustain the Proposed Collection Actions

Appeals' determinations of nonliability issues are reviewed for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). In reviewing for abuse of discretion, generally we consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of the Appeals Office. Magana v. Commissioner, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Abuse of discretion exists where the Appeals officer's determinations are arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129

[*20] T.C. 107, 111 (2007). The taxpayer has the burden to prove abuse of discretion. See Rule 142(a).

Petitioner argues that it provided the SOs with voluminous documentation to show its dire financial condition and the SOs did not take this information into account in sustaining the collection actions. Petitioner further argues that withdrawal of the NFTLs was appropriate because it provided the SOs with adequate information to show the liens negatively affected its ability to obtain financing. Finally, petitioner argues that the SOs refused to consider several proposed installment agreements.

Respondent argues that petitioner withdrew its request for an installment agreement even though SO1 had tentatively agreed to it during CDP hearing 1. Respondent argues that petitioner did not properly propose other collection alternatives for any of the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31, June 30, and December 31, 2012, and did not provide the SOs with adequate information to assess any other collection alternative. Respondent also argues that with respect to CDP hearing 2, petitioner was not in current compliance on its Federal tax deposits.

The underlying theme of both parties' arguments for all three CDP hearings is whether petitioner provided the SOs with ample documentation to pursue

[*21] collection alternatives (other than its initial proposal for an installment agreement) or withdraw the liens entirely. Although petitioner provided respondent with voluminous documentation, the documents did not prove that its former accountant stole the amount petitioner claims and they did not show that the FDA regulations required it to move--i.e., they did not provide evidence that its prior facility could not meet the requirements under the regulations. More importantly though, petitioner's documents did not specify how these events (which occurred in 2008 and 2010) prevented it from timely paying its employment taxes for the tax periods ending June 30, 2007, June 30, September 30, and December 31, 2011, and March 31 and December 31, 2012. In fact, if anything, documents such as petitioner's Form 433-B and Forms 1120S showed that petitioner had enough cashflow to timely pay its liabilities. For instance, petitioner's Form 433-B showed that it had positive cashflow for June 2012 and petitioner's Forms 1120S showed that depreciation deductions rather than economic losses made up most of its losses.

Petitioner argues that respondent's determination was based on petitioner's failure to submit a written installment agreement. There is no requirement that a taxpayer's initial request for an installment agreement be in writing although the Code and the regulations require an approved installment agreement to be in

[*22] writing. Sec. 6159(a); <u>Seagrave v. United States</u>, 221 F. App'x 457, 459 (7th Cir. 2007); sec. 301.6159-1(c)(2), Proced. & Admin. Regs. However, a taxpayer must properly request a collection alternative before the Commissioner can consider it. <u>See</u> <u>Glossop v. Commissioner</u>, T.C. Memo. 2013-208; <u>Veneziano v. Commissioner</u>, T.C. Memo. 2011-160; <u>Swanton v. Commissioner</u>, T.C. 2010-140, slip op. at 17 (citing <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005)). Here nothing in the record shows that petitioner seriously considered any collection alternative, written or otherwise, other than the initial request for an installment agreement of $20,000 per month during CDP hearing 1. Petitioner withdrew this request thereafter by asking SO1 to issue a notice of determination. Although petitioner requested an installment agreement in its CDP request for CDP hearing 3, petitioner failed to provide SO3 with the financial information necessary for SO3 to assess the viability of its request. <u>See</u> sec. 301.6320-1(e)(1), Proced. & Admin. Regs. (taxpayers are expected to provide all relevant information requested by the Appeals Office, including financial statements, for its consideration of the facts and issues involved in the hearing).

Finally, petitioner relies on <u>Alessio Azzari, Inc. v. Commissioner</u>, 136 T.C. 178 (2011), to show that the Commissioner may not premise a denial of a request for an installment agreement upon a taxpayer's momentary noncompliance on its

[*23] Federal tax deposits.  In support of this argument, petitioner cites the Internal Revenue Manual (IRM) to show that taxpayers need not be in compliance with Federal tax deposit requirements to have a pending installment agreement. See IRM pt. 5.14.1.3(5) (Mar. 4, 2011).  First, we note the well-settled principles that the IRM does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers.  United States v. Caceres, 440 U.S. 741, 751 (1979); Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13; McGaughy v. Commissioner, T.C. Memo. 2010-183.  Second, petitioner's reliance on Alessio Azzari, Inc., is misplaced.  In that case, the Commissioner's own abuse of discretion contributed to the taxpayer's failure to make timely deposits.  See Alessio Azzari, Inc. v. Commissioner, 136 T.C. at 194.  Here, respondent's actions did not contribute to petitioner's repeated failures to comply with the tax laws.

It is clear from our review of the record that the SOs verified that the requirements of applicable law and administrative procedure were followed, properly considered the issues petitioner raised during its CDP hearings, and properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection action be no more intrusive than necessary.  An SO's decision to decline to withdraw an NFTL is discretionary, and none of the circumstances permitting withdrawal are present in these cases.  See Kyereme v.

**[*24]** Commissioner, T.C. Memo. 2012-174; Crisan v. Commissioner, T.C. Memo. 2007-67; see also sec. 301.6323(j)-1(c), Proced. & Admin. Regs. Accordingly, we sustain respondent's determination to proceed with the collection actions.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decisions will be entered

for respondent in docket Nos.

28594-12L and 3719-14L.

An appropriate order and

decision will be entered in docket

No. 2589-13L.